**UNITED STATES of America,**
**Appellee,**

v.

**Marlan SANDERS, Defendant–**
**Appellant.**

**Docket No. 99–1486**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 2, 2000

Decided: March 9, 2000

David A. Lewis, Federal Defender Division Appeals Bureau, Legal Aid Society, New York, NY, for Defendant–Appellant.

Steven G. Kobre, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, and Jennifer M. Moore, Assistant United States Attorney, of counsel), for Appellee.

Before: OAKES, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

Defendant Marlan Sanders appeals from a judgment of conviction and sentence entered on August 13, 1999, following a one-day bench trial in the United States District Court for the Southern District of New York (Richard C. Casey, *Judge*). The District Court found Sanders guilty of: (1) possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1); (2) being in possession of a firearm while subject to a court restraining order, in violation of 18 U.S.C. § 922(g)(8); and (3) possessing a firearm on which the manufacturer's serial number had been removed and obliterated, in violation of 18 U.S.C. § 922(k).[1] The District

---

1. Section 922 provides in relevant parts:

   (g) It shall be unlawful for any person—
   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

   .   .   .   .   .

   (8) who is subject to a court order that—
   (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
   (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person ...; and
   (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner ... or

   (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner ...

   .    .    .    ..    .

   to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition....

   .    .    .    .    .

   (k) It shall be unlawful for any person knowingly to ... possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

Court sentenced Sanders principally to 77 months of imprisonment and three years of supervised release. On appeal, Sanders raises multiple challenges to his conviction and sentence. We address here only his claim that the District Court erred in counting his prior conviction for fare-beating in calculating his criminal history score.[2] For the reasons stated below, we vacate the judgment of the District Court and remand for resentencing.

## I.

The District Court based its calculation of Sanders's criminal history category on the Presentence Report ("PSR") prepared by the United States Probation Office ("Probation Office"). The PSR determined that Sanders had three prior convictions, earning him a total of seven criminal history points. Included in that total, pursuant to U.S.S.G. § 4A1.1(c),[3] was one point for Sanders's April 12, 1995 misdemeanor conviction for fare-beating (*i.e.*, jumping a turnstile to enter a subway without paying), a theft of services proscribed by New York Penal Law § 165.15(3).[4] Sanders had been sentenced to a discharge conditioned on performance of one day of community service for this conviction. Based on these calculations,

the PSR determined that Sanders had a criminal history category of IV, and recommended that he be sentenced to between 51 months and 63 months' imprisonment. Prior to sentencing, Sanders filed a letter objecting to the inclusion of the point for his fare-beating conviction. Without the point for fare-beating, Sanders noted, his criminal history score would be six, and he would fall into criminal history category III, rather than IV,[5] with the result that his sentencing range would be 41 to 51 months. The District Court rejected Sanders's argument and, relying on *United States v. Martinez–Santos*, 184 F.3d 196 (2d Cir.1999), counted Sanders's fare-beating conviction in his criminal history computation. This appeal followed.

## II.

As a general rule, § 4A1.1(c)[6] of the Sentencing Guidelines provides that any misdemeanor conviction that carries a fine or term of imprisonment of fewer than sixty days results in a single criminal history point. Section 4A1.2(c)(1), however, provides an exception to this rule, listing 15 specific offenses ("Listed Offenses") "and offenses similar to them" that are to be counted *only* if "(A) the sentence [for the prior offense] was a term of probation

**2.** Sanders's other claims are addressed in a summary order filed simultaneously herewith. *See United States v. Sanders*, No. 99–1486, 208 F.3d 204, 2000 WL 268577 (2d Cir. March 9, 2000).

**3.** U.S.S.G. § 4A1.1 provides in relevant part:
The total points from items (a) through (f) determine the criminal history category . . .
(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.

**4.** Section 165.15 provides in relevant part:
A person is guilty of theft of services when:
3. With intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of

the lawful charge therefor . . . he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by . . . stealth, deception or mechanical tampering. . . .

**5.** The government points out in its brief that after the preparation of the PSR, but prior to sentencing, Sanders was convicted of an additional felony, for which he was eventually sentenced to five years' imprisonment. The government contends that this conviction and sentence should earn Sanders at least one, and possibly as many as three, additional criminal history points on remand, leaving Sanders with a criminal history category of at least IV, irrespective of the inclusion of his fare-beating conviction. However, Sanders's PSR was never updated to reflect this additional felony, nor was the felony made part of the record below. Accordingly, we can not consider it on appeal.

**6.** *See* text quoted *supra* note 3.

of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense [for which sentence is to be imposed]." U.S.S.G. § 4A1.2(c)(1).[7] The question in this case is whether Sanders's fare-beating conviction fits within this exception. Because fare-beating is an offense entirely different from Sanders's instant firearm-related offenses, because Sanders was sentenced only to conditional discharge with one day of community service for the offense,[8] and because fare-beating is not one of the Listed Offenses, this question turns on the similarity *vel non* of the fare-beating offense to the Listed Offenses.

■■■ We recently have held, in *United States v. Martinez–Santos*, 184 F.3d 196, 205–06 (2d Cir.1999), that district courts should evaluate whether a prior offense is "similar" to the Listed Offenses in § 4A1.2(c) by applying the "multi-factor" analysis adopted by the Fifth Circuit in *United States v. Hardeman*, 933 F.2d 278 (5th Cir.1991). Under this approach, courts are to evaluate: (1) the similarity of the offense elements; (2) the comparative punishments imposed for the offenses; (3)

the perceived seriousness of the unlisted offense, as indicated by the level of punishment; (4) the level of culpability associated with the unlisted offense; and (5) the degree to which the commission of the unlisted offense indicates a likelihood of recurring criminal conduct. *See Martinez–Santos*, 184 F.3d at 200 (citing *Hardeman*, 933 F.2d at 281). A district court also may consider "any other factor" that it "reasonably finds relevant" in comparing the prior and Listed Offenses, keeping in mind that "the goal of the inquiry is to determine whether the unlisted offense under scrutiny is 'categorically more serious' than the Listed Offenses to which it is being compared." *Martinez–Santos*, 184 F.3d at 206 (quoting *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir.1992)).

■■■ We review the District Court's interpretation and application of § 4A1.2(c) *de novo*, and note that the classification of offenses as "similar" to those listed in § 4A1.2(c) is a matter of federal law, though the prior offenses are defined and the sentences are imposed under state law. *See id.* at 198. The District Court in the instant case determined that

---

**7.** The 15 Listed Offenses of § 4A1.2(c)(2) are as follows:

> Careless or reckless driving
> Contempt of court
> Disorderly conduct or disturbing the peace
> Driving without a license or with a revoked or suspended license
> False information to a police officer
> Fish and game violations
> Gambling
> Hindering or failure to obey a police officer
> Insufficient funds check
> Leaving the scene of an accident
> Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
> Non-support
> Prostitution
> Resisting arrest
> Trespassing.

**8.** The government argued at sentencing that under *United States v. Labella–Szuba*, 92 F.3d 136 (2d Cir.1996), Sanders's conditional discharge sentence should be considered the equivalent of a one-year term of probation.

However, the question in *Labella–Szuba* was whether the defendant's one-year conditional discharge, subject to revocation if the defendant committed another offense within the year, qualified as a "criminal justice sentence" requiring an automatic two-point addition to her criminal history score pursuant to U.S.S.G. § 4A1.1(d). *Id.* at 138. We held that, because the defendant's conditional discharge remained revocable, her sentence contained a sufficient "custodial or supervisory component" to justify the addition of criminal history points required under § 4A1.1(d). *Id.* Here, by contrast, the inquiry turns on whether Sanders's fare-beating conviction is similar to the Listed Offenses in § 4A1.2(c)(1); the government makes no claim that Sanders's conditional discharge should qualify as a "criminal justice sentence" under § 4A1.1(d). Moreover, Sanders's conditional discharge requires only that he perform one day of community service, and thus lacks any "custodial or supervisory component" akin to that present in *Labella–Szuba*. Accordingly, we reject the government's argument that Sanders's fare-beating conviction should automatically count in his criminal history scoring.

Sanders's conviction for fare-beating was "categorically more serious" than the Listed Offenses because: (1) intent to obtain transportation without paying is a Class A misdemeanor punishable by up to one year in prison under New York law; and (2) the "fraudulent and larcenous" nature of fare-beating renders it more culpable than the Listed Offenses.[9] Sanders argues that the District Court's analysis was both misguided and incomplete, in that it failed to engage in the multi-factor analysis articulated in *Hardeman* and adopted in *Martinez–Santos*. We agree.

■ The District Court's rationale for counting Sanders's fare-beating conviction is unacceptable for several reasons. First, although thefts of services, including fare-beating, qualify as Class A misdemeanors under New York state law, we, like the Seventh and Ninth Circuits, look to the actual conduct involved and the actual penalty imposed—rather than to the range of possible conduct or the range of possible punishments—when determining whether a prior offense is "similar" to a Listed Offense. *See United States v. Booker,* 71 F.3d 685, 689 (7th Cir.1995); *United States v. Kemp,* 938 F.2d 1020, 1023 (9th Cir. 1991). In this respect, fare-beating convictions for jumping a subway turnstile, despite their general classification as Class A misdemeanors, often result in lenient punishments of at most a few days' imprisonment. *See, e.g., Martinez–Santos,* 184 F.3d at 199 n. 2 (noting that defendant's fare-beating conviction resulted in a mere five days' imprisonment). Second, while fare-beating may be "fraudulent and larcenous," this does not distinguish it from Listed Offenses such as "[f]alse information to a police officer" or "[i]nsufficient funds check." Indeed, jumping a turnstile

to avoid paying the $1.50 fare for a subway ride is arguably *less* "fraudulent" or "larcenous" than knowingly writing a bad check for a larger sum.

Further, while *Martinez–Santos* does not require district courts to apply the *Hardeman* multi-factor test *verbatim,* or in some robotic fashion, it does dictate that the similarity of prior and Listed Offenses be evaluated in light of these (and any other reasonably relevant) factors. Accordingly, we think it significant that all of the *Hardeman* factors point to a finding that Sanders's fare-beating offense was similar to the Listed Offenses. Notably, fare-beating by jumping a subway turnstile: (1) shares elements in common with at least one of the Listed Offenses (*i.e.,* "[i]nsufficient funds check"); (2) is an offense often subject to lenient punishment; (3) is perceived as a relatively minor offense, as indicated by the level of punishment; (4) is arguably less culpable than several of the Listed Offenses, including "[p]rostitution," "[r]esisting arrest," "[n]on-support," "[l]eaving the scene of an accident," and "[h]indering or failure to obey a police officer;" and (5) does not necessarily "indicate[ ] a likelihood of recurring criminal conduct."

In *Martinez–Santos,* we left it to the District Court, on remand, to determine whether the defendant's conviction for fare-beating by jumping a subway turnstile was similar to the Listed Offenses. For the reasons stated above, and in the interest of securing uniform treatment of prior convictions for the same offense,[10] we now conclude that a single prior fare-beating conviction based on the jumping of a subway turnstile cannot be considered "categorically more serious" than the offenses

---

9. The District Court, at sentencing, mistakenly referred to theft of services as a "Class B," rather than a "Class A," misdemeanor. However, this appears to have been a simple misstatement, as the Court also noted that the offense was punishable by up to one year in prison.

10. Compare, for instance, the District Court's ruling in the instant case or in *Martinez–Santos* with *United States v. Gregory,* No. 90 CR. 0046(RWS), 1990 WL 63780 (S.D.N.Y. May 9, 1990) ("fare beating" by jumping a turnstile is a misdemeanor offense "similar" to those listed in § 4A1.2(c) and therefore should not be counted in the defendant's criminal history score).

listed in § 4A1.2(c)(1). Accordingly, we hold that the District Court erred in including Sanders's fare-beating conviction in his criminal history score.

### III.

The sentence imposed by the District Court is vacated and the cause remanded for resentencing only.