**UNITED STATES of America,**
**Appellee,**

v.

**Pedro MORALES, Defendant–**
**Appellant.**

**Docket No. 00–1284.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 10, 2000.

Decided Dec. 13, 2000.

---

**7.** The DOC policy provides for searches to be "conducted in a private area, away from public view."

Paul J. Madden, Brooklyn, NY, on the brief, for defendant-appellant.

Greg D. Andres, Asst. U.S. Atty., (Loretta E. Lynch, U.S. Atty., Emily Berger, Asst. U.S. Atty., Brooklyn, NY, on the brief), for appellee.

Before NEWMAN and KEARSE, Circuit Judges, and CHIN,* District Judge.

JON O. NEWMAN, Circuit Judge.

This appeal requires us to determine whether a defendant's prior offense is "similar to" the minor offenses listed in section 4A1.2(c)(1) of the Sentencing Guidelines, in which event it does not af-

* Honorable Denny Chin of the United States District Court for the Southern District of New York, sitting by designation.

fect his Criminal History Category nor contribute to rendering him ineligible for the so-called "safety valve" exception to mandatory minimum sentencing for certain narcotics offenses. The prior offense at issue is a New York conviction for second-degree harassment. We must consider both how the "similar to" comparison should be made and whether the particular prior offense at issue should be counted. These matters arise on an appeal by Pedro Morales from the March 24, 2000, judgment of the United States District Court for the Eastern District of New York (John Gleeson, District Judge), sentencing him to a mandatory minimum sentence of five years upon his plea of guilty to a narcotics offense.

The District Court ruled that Morales's harassment conviction was not "similar to" the listed offenses and, because he had one criminal history point for another prior offense, rendered him ineligible for the safety-valve adjustment. We conclude that, for a broad offense like harassment, the "similar to" determination requires a fact-specific inquiry and that the facts of Morales's harassment offense meet the "similar to" standard. We therefore reverse and remand for resentencing.

## Background

*Guidelines' treatment of prior convictions.* The Sentencing Guidelines provide a sentencing table, specifying sentencing ranges that depend on the seriousness of the offense and the extent of the defendant's prior record, if any. The table comprises 43 rows of offense levels and six columns of criminal history categories. In general, the appropriate criminal history category is determined by the number and length of sentences imposed for prior offenses. One, two, or three points are assessed for each prior sentence, depending on its length, and the total number of points determines the appropriate criminal history category. Each sentence of less than 60 days counts for one point, *see* U.S.S.G. § 4A1.1(c), except that sentences for certain misdemeanors and petty offenses are not counted at all, *see id.* § 4A1.2(c). The Guidelines list several minor offenses ("Listed Offenses"), set out in the margin, [1] that do not incur the one-point assessment (in the absence of certain aggravating circumstances not relevant to the pending case).[2] Especially relevant to the pending appeal is the language of section 4A1.2(c)(1) excluding from the one-point assessment offenses "similar to" the Listed Offenses. The disputed issue at Morales's sentencing was whether a 1997 New York conviction for second-degree harassment, in violation of N.Y. Penal Law § 240.26 (McKinney 2000), was similar to the Listed Offenses. That issue determined not only Morales's criminal history category but, more significantly for him, whether he was eligible for the "safety valve" adjustment, which exempts some defendants from the mandatory minimum sentences applicable to narcotics offenses. A defendant with more than one criminal history point is not eligible for the safety valve adjustment, *see* 18 U.S.C. § 3553(f)(1), and

---

1. Careless or reckless driving
   Contempt of court
   Disorderly conduct or disturbing the peace
   Driving without a license or with a revoked or suspended license
   False information to a police officer
   Fish and game violations
   Gambling
   Hindering or failure to obey a police officer
   Insufficient funds check
   Leaving the scene of an accident
   Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
   Non-support
   Prostitution
   Resisting arrest
   Trespassing.

2. An aggravating factor exists where (1) the prior offense resulted in a sentence of imprisonment of at least thirty days or probation of at least one year, or (2) the prior offense is similar to the offense for which the defendant is being sentenced. U.S.S.G. § 4A1.2(c)(1).

Morales already had one point for a 1993 burglary conviction.

*The harassment offense.* The harassment incident occurred in 1997. The details, recounted in the Probation Department's Pre–Sentence Report (PSR), were furnished by Morales and Ruby Rodriguez, who is now his fiancée. They gave consistent accounts of the following episode. Morales and Rodriguez were living together in a home in Brooklyn. Rodriguez learned that Morales was romantically involved with another woman. Enraged, she attacked Morales in their home by throwing household objects at him, including a vase. In an attempt to thwart her blows, Morales struck her once and then left the home. Rodriguez reported the incident to the police, who arrested Morales. He pled guilty to harassment in the second degree, and was sentenced to a conditional discharge.[3] Rodriguez and Morales are planning to marry; they have one child, and she is expecting another. The 1997 harassment incident was the only time Morales has ever been violent with her.

*District Court sentencing.* Morales pled guilty to possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Judge Gleeson determined that Morales's offense level was 25, and that his prior record required assessment of two criminal history points: one for a 1993 burglary conviction and one for the 1997 harassment conviction.

Although harassment is not a Listed Offense, Morales argued that it was "similar to" some of them, especially disorderly conduct and resisting arrest, and that his harassment conviction should not add a point to his criminal history score. Judge Gleeson disagreed. As he explained:

The factors that are of most importance to me here are the facts of the offense. I don't think it is helpful just to look at the elements of disorderly conduct as opposed to harassment or the punishments prescribed or permitted by each. They are very broad statutes and for that reason, actually, have been subjected to some serious constitutional attack in New York State Courts. There are lots of ways to violate them. The important thing to me is how this defendant violated the harassment, that it is a statute that in its application more frequently addresses physical contact of the sort that he had with his fiancé[e]. That's the type of crime that in my judgment is an aggravated offense, domestic abuse. I find—I don't mean find in a factual way, but to my mind [it] is an extremely, extremely serious offense.

Earlier at the sentencing hearing, Judge Gleeson had described harassment as a "crime of violence." Although Judge Gleeson acknowledged that the same conduct could often be prosecuted as either disorderly conduct or harassment, he concluded that disorderly conduct differed from harassment because disorderly conduct "doesn't conjure up things like beating someone up."

As a result of Judge Gleeson's decision to assess one criminal history point for the harassment conviction, Morales's sentence was ultimately increased by at least three months. With one point assessed for the harassment conviction, Morales's Guidelines range was 63 to 78 months (offense

---

**3.** New York law defines second-degree harassment as follows:

A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:

1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or

2. He or she follows a person in or about a public place or places; or

3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

. . .

Harassment in the second degree is a violation.

N.Y. Penal L. § 240.26 (McKinney 2000).

level 25 and Criminal History Category II). Judge Gleeson departed downward because he found that Morales's criminal history category over-represented the likelihood of his committing future crimes, and initially imposed a sentence of 57 months. However, a few minutes after imposing this sentence, Judge Gleeson realized that Morales was subject to a five-year mandatory minimum sentence because the two criminal history points precluded the safety-valve exception to that mandatory sentence. Morales was brought back to the courtroom and sentenced to 60 months. Had Morales not been awarded a point for the harassment conviction, his guideline range, using Criminal History Category I, would have been 57–71 months, and he would have been eligible for the "safety-valve" exception to the mandatory minimum sentencing provisions.[4] Presumably, he would have received a sentence at least as low as the 57 months Judge Gleeson initially imposed, and, depending on Judge Gleeson's decision whether to depart, possibly a lower sentence.

### Discussion

The question on this appeal is whether the District Court erred in ruling that Morales's prior harassment conviction was not "similar to" any of the Listed Offenses. We consider first our standard of review, then the substantive standard for making the "similar to" comparison, and finally the application of that substantive standard to the facts of Morales's offense.

■ *Standard of review.* In reviewing claims of erroneous sentencing, we "accept the findings of fact of the district court unless they are clearly erroneous," 18 U.S.C. § 3742(e), and "give due deference to the district court's application of the guidelines to the facts," *id.* Issues of law are reviewed *de novo.* In two recent cases,

United States v. Martinez–Santos, 184 F.3d 196 (2d Cir.1999), and United States v. Sanders, 205 F.3d 549 (2d Cir.2000), we considered these standards in the context of a challenge to counting a minor offense in the determination of a defendant's criminal history score.

*Martinez–Santos* gave a somewhat ambiguous message on the issue of standard of review. After stating that sentencing judges had considerable flexibility to assess many factors in deciding whether a prior offense is similar to a Listed Offense, we said:

> [W]e feel confident that granting to the district courts this additional flexibility generally will not result in wildly varied sentences. And in those *rare* cases where the district court *veers off course*, the similarity inquiry raises an issue of law. As such, we review de novo the district court's decision to include or exclude a prior offense under § 4A1.2(c).

184 F.3d at 205 (emphasis added). It is not entirely clear whether this passage meant that the decision whether to include or exclude a prior offense is always to be reviewed *de novo* or only in those "rare" instances where a district court "veers off course." *Sanders,* citing *Martinez–Santos,* said that "[w]e review the District Court's interpretation and application of § 4A1.2(c) *de novo* . . . ." 205 F.3d at 552.

■ In taking our guidance from *Martinez–Santos* and *Sanders,* we note that both cases involved minor offenses that were narrow in scope. Both cases involved the failure to pay transit fares ("fare-beating"), *see* N.Y. Penal Law § 165.15(3) (McKinney 2000); *Martinez–Santos,* also involved the sale of bus transfer tickets ("transit scalping"), *see* N.Y. Penal Law § 120.00 et seq. (McKinney 2000). Although there might be slight variations in

---

4. At sentencing, the Government took the position that, if Judge Gleeson decided not to count the harassment conviction, it would not oppose application of the safety valve. At the plea proceeding, defense counsel had contended that, if the safety valve applied, Mor-ales would be entitled to a two-level decrease in his offense level by virtue of U.S.S.G. § 2D1.1(b)(6). However, that decrease is available only if the unadjusted offense level is at least 26. *See id.* Morales's offense level was 25.

the techniques of fare-beating and transit scalping, each of these provisions punishes only one basic form of conduct. As to such provisions, the determination of whether the offense is similar to the Listed Offenses is properly understood to raise an issue of law, appropriate for *de novo* review. On the other hand, where, as here, a statute punishes a range of conduct under the broad rubric of "harassment," the comparison contemplated by section 4A1.2(c) must focus on the particular conduct of the defendant. In such circumstances, a sentencing judge making the "similar to" comparison is applying the guideline to the facts, a matter to which we are to give "due deference." 18 U.S.C. § 3742(e).

■ *Standard for the "similar to" comparison.* "[T]he goal of the inquiry is to determine whether the unlisted offense under scrutiny is 'categorically more serious' than the Listed Offenses to which it is being compared." *Martinez–Santos,* 184 F.3d at 206 (quoting *United States v. Caputo,* 978 F.2d 972, 977 (7th Cir.1992)).[5] In determining whether the unlisted offense is clearly more serious than the Listed Offenses, *Martinez–Santos* and *Sanders* both stated that our Circuit favors a "multifactor test." *See Sanders,* 205 F.3d at 553; *Martinez–Santos,* 184 F.3d at 204–05. This test, developed by the Fifth Circuit in *United States v. Hardeman,* 933 F.2d 278 (5th Cir.1991), takes a

> common sense approach which relies on all possible factors of similarity, including [1] a comparison of punishments imposed for the listed and unlisted offenses, [2] the perceived seriousness of the offense as indicated by the level of punishment, [3] the elements of the offense, [4] the level of culpability involved, and [5] the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

*Martinez–Santos,* 184 F.3d at 200 (quoting *Hardeman,* 933 F.2d at 281) (emphasis in *Martinez–Santos*). We have recognized that the "similar to" comparison "encompass[es] the factors listed in *Hardeman* as well as any other factor the court reasonably finds relevant in comparing prior offenses and Listed Offenses." *Id.* at 206; *see Sanders,* 205 F.3d at 553 (courts need not "apply the *Hardeman* multi-factor test *verbatim,* or in some robotic fashion").

As we indicated in discussing the standard of review, the "similar to" comparison should focus on the particular facts of the prior offense whenever the statute that was violated covers a broad range of conduct. Second-degree harassment can be committed in a variety of ways, and not all the conduct covered by the statute is more serious than the Listed Offenses. *Cf. United States v. Kemp,* 938 F.2d 1020 (9th Cir.1991) ("Domestic violence" convictions under Arizona law could not be counted for criminal history score, because Arizona's domestic violence statute included "disorderly conduct," a Listed Offense, within its definition of proscribed conduct.) We caution, however, that sentencing judges need not always develop a factual record concerning the prior offense. Typically, the pre-sentence report will sufficiently acquaint the sentencing judge with the circumstances of the prior offense, and, if the Government wishes to persuade the sentencing judge to assess a criminal history point for a particular offense that seems generically to be minor, it has the burden to amplify the record. *See Kemp,* 938 F.2d at 1025.

■ *Making the "similar to" comparison in the pending case.* Considering first the details of Morales's harassment offense, as revealed by the record, we note three key circumstances: Rodriguez precipitated the incident, Morales hit Rodri-

5. Although "categorically" might be misunderstood to mean that the unlisted offense is within a category that is more serious than the Listed Offenses, we think it clear that both *Martinez–Santos* and *Caputo* used the adverb in its ordinary sense to mean "without qualification or reservation." *See* Webster's Third New International Dictionary (1993) ("categorically").

guez once, and he struck her in an attempt to counter her act of throwing household objects at him, including a vase. The record does not indicate either the severity of the blow or where Rodriguez was hit. Though most of the Listed Offenses involve conduct that is not specifically directed at a victim, three of them—disorderly conduct, disturbing the peace, and resisting arrest—can encompass conduct harming another person. Whether Morales's conduct should be regarded as clearly more serious than the conduct encompassed by the three Listed Offenses that include conduct harming another person is illuminated by several of the factors from the multifactor test, notably how seriously New York regarded his conduct.

■ Morales was not convicted of assault or any other offense that generically involves use of force against another person. Instead, he was convicted only of second-degree harassment, an offense that New York classifies, along with disorderly conduct, as an offense against public order. *See* N.Y. Penal Law §§ 240.20, 240.26 (McKinney 2000). Moreover, the definition of "physical injury," required for an assault, was "intended to exclude such things as petty slaps ... and the like [which are] more appropriately prosecuted as the minor offense of harassment." *Id.* § 240.26 (Practice Commentary) (internal quotation marks omitted). Furthermore, the offense is a violation for which the maximum punishment is fifteen days, whereas some of the Listed Offenses are class A misdemeanors, for which the maximum punishment is one year. *See, e.g.,* "criminal contempt," *see id.* § 215.50 (second-degree criminal contempt); "resisting arrest," *see id.* § 205.30 (resisting arrest); "failure to obey a police officer," *see id.* § 195.05 (second-degree obstruction of government administration). Finally, Morales's punishment was a conditional discharge, an unsupervised release conditioned on his avoiding additional arrests for one year. *See id.* § 65.05.

We also consider "the level of culpability involved," *Hardeman,* 933. F.2d at 281, in the offense of second-degree harassment and relevant Listed Offenses such as disorderly conduct and resisting arrest, the most serious of the Listed Offenses. In New York and under the Model Penal Code ("MPC"), disorderly conduct includes fighting. *See* N.Y. Penal Law § 240.20(1); MPC § 250.2(1)(a). Although disorderly conduct is often merely loud or obnoxious behavior, or brawling among willing combatants, in many jurisdictions incidents of domestic violence are prosecuted as disorderly conduct. *See, e.g., State v. Leavitt,* 8 Conn.App. 517, 520, 513 A.2d 744, 746 (Conn.App.1986) (father convicted of disorderly conduct for putting daughter in headlock and dragging her through house); *People v. Kulpa,* 102 Ill.App.3d 571, 575, 58 Ill.Dec. 222, 430 N.E.2d 164, 167 (1981) (discussing husband's disorderly conduct conviction for throwing a plate of food at wife).

Resisting arrest also involves violent conduct that most people would recognize as involving a significant degree of moral guilt. Moreover, unlike disorderly conduct, this is true with respect to almost all possible violations of the offense. The defendant must "create[ ] a substantial risk of bodily injury to the public servant or anyone else, or employ[ ] means justifying or requiring substantial force to overcome the resistance." MPC § 242.2. Typically, to sustain a conviction there must be at least a threat of violence, as opposed to mere verbal abuse or passive resistance. *See State v. Womack,* 174 Ariz. 108, 847 P.2d 609 (Ariz. Ct.App.1992) (fleeing scene via high speed chase insufficient to support resisting arrest charge); *In re C.L.D.,* 739 A.2d 353, 357 (D.C.1999) (ignoring police officer's command, using abusive language, and walking away is not resisting arrest; defendant did not "cross the line" into "active confrontation").

Finally, we note that the District Court found and the parties agree that Morales's harassment conviction does not show any

"likelihood of recurring criminal conduct." *Hardeman*, 933 F.2d at 281. This is an important element of the multifactor test, because "the likelihood of recidivism" was a major consideration in the Sentencing Commission's development of a system of differentiated criminal history categories. *See* U.S.S.G. Ch. 4, Pt. A, intro. comment.

### Conclusion

Because the specific facts of Morales's harassment conviction and the relevant comparison factors we have discussed all indicate that his prior offense is not clearly more serious than the most relevant of the Listed Offenses, we conclude, even after giving due deference to the District Court's application of section 4A1.2(c)(1), that the Court erred in assessing a criminal history point for that conviction. We therefore vacate Morales's sentence, and remand for resentencing.