**UNITED STATES of America,
Appellant,**

v.

**Vincent SICURELLA, also known as
"Jimmy," Defendant–Appellee,**

Mark Jamieson, Defendant.

No. 03–1543.

United States Court of Appeals,
Second Circuit.

Argued: March 11, 2004.

Decided: May 5, 2004.

Anthony M. Bruce, Assistant United States Attorney, for Michael A. Battle, United States Attorney, Western District of New York, for Appellant United States of America.

John J. Molloy, West Seneca, N.Y., for Defendant–Appellee Vincent Sicurella.

Before: SOTOMAYOR, KATZMANN, KEITH, Circuit Judges.*

KATZMANN, Circuit Judge.

This appeal involves interpretation of U.S.S.G. § 2E2.1(b)(1)(C), which provides for a three-level enhancement "if a dangerous weapon (including a firearm) was brandished or possessed" in connection with making or financing an extortionate extension of credit or collecting an extension of credit by extortionate means.

The Defendant–Appellee Vincent Sicurella was convicted of using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894. *See United States v. Sicurella,* 61 Fed.Appx. 754 (2d

---

* The Honorable Damon J. Keith, Circuit Court Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Cir.2003). The Probation Department's pre-sentence report ("PSR") added a three-point enhancement to the recommended sentence based on U.S.S.G. § 2E2.1(b)(1)(C). At sentencing, however, the defendant objected to the enhancement and the district court sustained the defendant's objection.

On appeal, this Court remanded for resentencing, finding that the district court had failed to make the requisite factual findings regarding the basis for its denial of the government's request for enhancement. *Sicurella*, 61 Fed.Appx. at 756–57. In a Memorandum and Order dated July 28, 2003, the district court found that there was no evidence that defendant had possession of, or ready access to, a dangerous weapon at the time of his meeting with Denaro. Accordingly, the district court declined to impose the enhancement.

The government now appeals, arguing that it was error for the district court to find that the defendant did not have possession of or ready access to the weapon during the commission of the criminal offense. We agree, and therefore we reverse the judgment of the district court.

## BACKGROUND

On July 13, 2000, Sicurella was charged in a two-count indictment with using extortionate means to collect an extension of credit (Count I) and conspiring to do so (Count II). Specifically, the defendant was charged with threatening one Henry Pauly, the owner of Pauly Roofing Company. Pauly had obtained a loan from loanshark Frank "Poochie" Chimento in the mid–1990s and made payments on the loan until Chimento's death. In the spring of 1998, the defendant visited Pauly and informed him that he was collecting on the Chimento loan. Pauly then made payments to the defendant until the end of 1999, when, due to his poor financial condition, Pauly ceased making payments. Defendant then began threatening Pauly.

In early–2000, defendant approached Pauly's business partner Frank Denaro to ask for his assistance in collecting the debt from Pauly. Denaro then contacted the Federal Bureau of Investigation ("FBI") and agreed to cooperate with the government by secretly recording his conversations with the defendant and Pauly. The FBI made numerous recordings of the defendant conversing with Denaro and Pauly. At trial, these recordings constituted the primary evidence against the defendant.

On June 20, 2000, Denaro called the defendant and arranged to meet him at a Denny's restaurant in Hamburg, New York. Defendant drove to the restaurant in his black Chevrolet Monte Carlo. He left the car parked outside and proceeded inside the restaurant, where the FBI agents arrested him.

The next day, June 21, FBI agents conducted an inventory search of the defendant's vehicle. In the course of the search, they discovered a small hammer and a sap in the seat-back pocket of the front passenger bucket seat. The agents obtained a search warrant pursuant to which they seized the hammer and the sap. These items were then entered into evidence at the trial.

On October 15, 2001, following a jury trial, the defendant was convicted on Count I of the indictment, using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894. The PSR prepared by the Probation Department determined that, pursuant to the federal Sentencing Guidelines, the defendant's base offense level was 20. The PSR also recommended a three-point enhancement pursuant to U.S.S.G. § 2E2.1(b)(1)(C), based on defendant's possession of a dangerous

weapon (the sap). The text of Guideline § 2E2.1 is as follows (emphasis added):

§ 2E2.1. Making or Financing an Extortionate Extension of Credit; Collecting an Extension of Credit by Extortionate Means

(a) Base Offense Level: 20

(b) Specific Offense Characteristics

(1) (A) If a firearm was discharged increase by 5 levels; or

(B) if a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels; or

*(C) if a dangerous weapon (including a firearm) was brandished or possessed, increase by 3 levels.*

(2) If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury . . . .

At sentencing, the district court—over the government's objection—declined to impose the enhancement.

Defendant appealed his conviction and sentence. By Summary Order dated April 2, 2003, this Court upheld the conviction but, with regard to the sentence, found that the district court had not made sufficient factual findings to facilitate appellate review. Accordingly, we vacated the sentence and remanded the case to the district court for findings and re-sentencing. *See Sicurella,* 61 Fed.Appx. at 756–57.

At re-sentencing, the district court made the following factual findings to support its denial of the enhancement sought by the government:

There is no evidence that Sicurella had the weapon in his possession—or readily available to him—at any time when he was committing the federal crime—i.e., threatening physical harm to the debtor. Contrarily, he was at the appointed place—where he was arrested—for the purpose of collecting further payments upon the debt. There is no evidence that, at such time and place—and, particularly at a time and place of threats—, Sicurella had possession of or ready access to the sap or other weapon.

The government now appeals, arguing that the district court erred and abused its discretion in its construal of U.S.S.G. § 2E2.1(b)(1)(C).

## DISCUSSION

■ We review the district court's findings of fact for clear error. *United States v. Lanese,* 890 F.2d 1284, 1291 (2d Cir. 1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). In addition, we give due deference to the district court's application of the Guidelines to the facts. *United States v. Morales,* 239 F.3d 113, 117 (2d Cir.2000). However, we review issues of law *de novo. Id.* In this case, we address the legal issue of whether the district court properly interpreted U.S.S.G. § 2E2.1(b)(1)(C), and thus we review *de novo* the district court's determination.

■ "The Sentencing Guidelines have the force and effect of law, and are to be construed as if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent." *United States v. Maria,* 186 F.3d 65, 70 (2d Cir.1999) (*quoting United States v. Kirvan,* 86 F.3d 309, 311 (2d Cir.1996)) (internal quotation marks and emphasis omitted). At issue in this case is whether the defendant "possessed" a dangerous weapon for purposes of the three-level enhancement prescribed by U.S.S.G. § 2E2.1(b)(1)(C).

■ It is clear that § 2E2.1 is implicated when a "dangerous weapon" was "discharged" or "otherwise used" or "brandished or possessed" in connection with

making or financing an extortionate extension of credit or collecting and extension of credit by extortionate means. In the case before us, there is no dispute that the defendant was engaged in extortion to collect an extension of credit in violation of 18 U.S.C. § 894. The question is, whether in connection with that crime, the defendant "possessed" a "dangerous weapon."

Under the Guidelines, a "dangerous weapon" is defined as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, app. n. 1(d)(i). A sap, which Webster's defines as a "a blackjack, policeman's club, or other object used as a bludgeon,"[1] is clearly an instrument "capable of inflicting death or serious bodily injury." *C.f., United States v. Orr,* 312 F.3d 141, 143 (3d Cir.2002) (concluding that dismantled pellet gun which could be used as a bludgeon is a "dangerous weapon" within the meaning of § 1B1.1). Indeed, when asked by this Court, defendant's counsel could point to no use for the sap other than as a means of inflicting injury.[2]

The inquiry then turns to whether defendant "possessed" a dangerous weapon for purposes of the enhancement provided for by U.S.S.G. § 2E2.1(b)(1)(C). In concluding that the defendant did not possess the weapon during the commission of the crime, the district court confined its inquiry to the moment when Sicurella was in the restaurant "threatening physical harm

to the debtor." We believe that this analysis was too narrow.

U.S.S.G. § 2E2.1(b)(1)(C) instructs us to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" when determining whether the dangerous weapons enhancement is applicable. *U.S.S.G. § 1B1.3(a)(1).* Guided by this language, we conclude that Sicurella's driving to the restaurant with a sap in the car with the intent of collecting the debt was a critical part of the offense conduct.

More than this, the fact that the sap was in the car as Sicurella drove to the appointed meeting place to collect the debt, and was readily accessible in the parked car during the meeting, strongly suggests that the sap could have been used to extract the debt if Denaro had not been forthcoming. Accordingly, although the sap was in the car at the time Sicurella met with Denaro, there is a clear nexus between the presence of the sap in the car and the offense conduct.[3]

In determining that Sicurella "possessed" a "dangerous weapon" during the offense of conviction, we take guidance from this Court's interpretation of the

1. *Merriam–Webster's Third New International Dictionary Unabridged,* <http://mwu.eb.com/mwu>. ("Bludgeon" is defined as "a short stick used as a weapon usually having one thick, heavy, or loaded end."). The dictionary definitions are included for informative purposes only; they are not dispositive of the legal question of whether a particular weapon is dangerous within the meaning of the Sentencing Guidelines.

2. Although defendant's counsel did make the ludicrous suggestion that the sap could have

been used for decorative purposes in the defendant's car.

3. In this case the nexus between possession and the offense is obvious. The sap has no utilitarian purpose beyond being a means of inflicting violence and pain. We do not here consider the applicability of the Guideline in situations where the nexus is less certain—for example, if a loanshark were to drive to a shakedown and the trunk of his car contained a toolbox with a hammer and screwdriver.

term "possessed" as used in this Guideline. In *United States v. Lanese*, 890 F.2d 1284 (2d Cir.1989), we upheld the application of the Guideline 2E2.1(b)(1)(C) enhancement for a defendant whose co-defendant possessed the weapon in question. The Court held that Guideline 2E2.1(b)(1)(C) "is satisfied by mere possession of the firearm during the crime, and does not require the particular defendant to have been in possession." *Id.* at 1292.[4]

In this case, the instrument in question, whose only use was to threaten someone with bodily harm or to inflict physical harm, was located in the defendant's car, which was parked in close proximity to the scene of the crime. Were the sap in Sicurella's residence when he met Denaro, we might not disagree with the district court's conclusion. The overwhelming evidence in this case, however, is that Sicurella could have walked outside the restaurant and retrieved the weapon if Denaro did not give him satisfaction (and the FBI did not intervene). As "[d]ominion, control, and knowledge may be inferred by a defendant's exclusive possession of the premises," *United States v. Finley*, 245 F.3d 199, 203 (2d Cir.2001), and Sicurella had exclusive possession of his car, which contained the sap, we think it was error for the district court to conclude that "[t]here is no evidence that ... Sicurella had possession of or ready access to the sap or other weapon." To the contrary, even though Sicurella did not have the weapon on his person, he possessed it while driving to the meeting—an act which was clearly relevant conduct undertaken in preparation for the offense of conviction. *See United States v. Bruce*, 78 F.3d 1506, 1509–10 (10th Cir.1996); U.S.S.G. § 2E2.1(b)(1)(C).

In light of the foregoing, we hold that the defendant possessed a dangerous weapon within the meaning of U.S.S.G. § 2E2.1(b)(1)(C). Accordingly, it was error for the district court to decline to impose the enhancement.

## CONCLUSION

After considering all the arguments raised by the parties, we reverse the district court's order declining to impose a sentence enhancement pursuant to U.S.S.G. § 2E2.1(b)(1)(C) and remand the case to the district court for further proceedings consistent with this opinion.

---

4. Multiple Guidelines call for an enhancement "if a dangerous weapon ... was possessed." *See*, U.S.S.G. §§ 2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B5.1, 2D1.1, 2D1.11, 2L1.1. We have the most experience applying the enhancement in drug cases, where, pursuant to the applicable commentary, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 3. We decline to apply commentary from one section to another automatically, however, *see* Application Instructions, U.S.S.G. § 1B1.1 cmt. n. 2 ("Definitions of terms also may appear in other sections. Such definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis."), and therefore we do not rely on cases interpreting § 2D1.1(b)(1), which do not require the defendant to have "personal possession, or even actual knowledge of the weapon's presence," *United States v. Stevens*, 985 F.2d 1175, 1188 (2d Cir.1993).