05-5256-cr
United States v. Ubiera

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: March 1, 2007          Decided: May 15, 2007)

Docket No. 05-5256-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                    Appellee,

          - v.-

HENRY UBIERA,

                    Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

     Before:          JACOBS, <u>Chief Judge</u>, CARDAMONE and
                      SOTOMAYOR, <u>Circuit Judges</u>.

     Appeal from a sentence imposed in the United States

District Court for the Southern District of New York

(Hellerstein, <u>J.</u>), following a plea to distribution and

possession with the intent to distribute and conspiracy to

distribute ecstasy.

     AFFIRMED.

                                        ARZA FELDMAN and STEVEN A.
                                        FELDMAN, Feldman & Feldman,

Uniondale, New York, <u>for Defendant-Appellant</u>.

STEVEN D. FELDMAN, Assistant United States Attorney (Celeste L. Koeleveld, <u>on the brief</u>) <u>for</u> Michael J. Garcia, United States Attorney, Southern District of New York, <u>for Appellee</u>.

DENNIS JACOBS, <u>Chief Judge</u>:

Following his plea to drug offenses in the United States District Court for the Southern District of New York (Hellerstein, <u>J.</u>), Henry Ubiera appeals his post-<u>Fagans</u> sentence. Ubiera's principal challenge is to the assessment of a criminal history point for each of two prior shoplifting convictions. Ubiera contends that shoplifting is similar to passing a bad check, which is excluded from the criminal history computation by the United States Sentencing Guidelines § 4A1.2(c)(1) along with "similar" offenses. Ubiera also argues that the court erred by: declining to credit him for acceptance of responsibility based on his failure to admit one of the overt acts of the conspiracy to which he pled; assigning a criminal history point to a conviction for disorderly conduct; and making certain findings by a preponderance of the evidence.

We affirm the judgment.

2

**I**

On February 4, 2004, Ubiera pled guilty to both counts of the indictment against him. The first count was conspiracy to distribute ecstasy pills in violation of 21 U.S.C. § 846, and specified two overt acts committed in or about February 2003: [i] Ubiera's sale of approximately 1000 pills, and [ii] Ubiera's delivery of approximately 800 pills. The second count was predicated on the second overt act, and alleged that Ubiera had distributed, and possessed with the intent to distribute, approximately 800 ecstasy pills, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C).

At his allocution, though Ubiera admitted to the conspiracy and to the delivery of the 800 pills, he denied selling the 1000 pills. The district court warned Ubiera of the consequences of his incomplete allocution:

> [W]hat I want you to be aware of is that one consequence of my allocuting you to less than all of the issues that may be involved in the indictment is that . . . if I find that there really was a lot more to what you did than what are you are ready to admit to, I may find that you are not entitled to the credit for acceptance of responsibility.

At a subsequent hearing held pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir. 1978), Ubiera repeated his

3

denial of the 1000 pill transaction.

At sentencing on October 14, 2004, the district court found that Ubiera had in fact sold the 1000 pills. Ubiera's responsibility for a total of 1800 ecstasy pills yielded an offense level of 26. See U.S.S.G. § 2D1.1. The district court declined Ubiera's request to reduce the offense level for acceptance of responsibility:

> I don't believe you clearly demonstrated acceptance of responsibility. I found that you were a drug dealer and you tried to hide that and you have not accepted that. And by denying something, admitting a little bit, you are creating a deception to yourself, perhaps to the probation officer, to others.

The district court concluded that Ubiera fell within Criminal History Category II. Neither party objected to this computation, which yielded a guidelines range of 70 to 87 months' imprisonment. Ubiera was then sentenced to 75 months' imprisonment, three years' supervised release and a $200 mandatory special assessment.

Ubiera appealed his sentence on various grounds, but was ultimately granted a remand for resentencing pursuant to United States v. Fagans, 406 F.3d 138 (2d Cir. 2005), because he had preserved an objection to mandatory application of the Guidelines, id. at 140-41.

4

At resentencing on September 16, 2005, the district court declined to revisit its factual findings or the resulting offense level calculation.  Ubiera's counsel argued that the criminal history computation was an "overstatement," citing cases that allow a downward departure if the criminal history category "substantially over-represents the seriousness of the defendant's criminal history."  U.S.S.G. § 4A1.3(b)(1); see also United States v. Thorn, 317 F.3d 107, 128-31 (2d Cir. 2003); United States v. Resto, 74 F.3d 22, 28 (2d Cir. 1996).  The district court refused to depart, citing Ubiera's criminal background, specifically a conviction for attempted petit larceny in New York and two convictions for shoplifting from retailers in New Jersey.  The court also referenced a conviction for disorderly conduct.

After hearing argument pursuant to United States v. Booker, 543 U.S. 220 (2005), on the application of 18 U.S.C. § 3553(a) to Ubiera's case, the district court declined to deviate from its original sentence.

**II**

Ubiera argues that his convictions for shoplifting

5

should have been excluded from his criminal history computation because shoplifting is similar to passing a bad check--in the Guidelines' parlance, an "insufficient funds check"--an offense which (along with "similar" offenses) is excluded from such computation by U.S.S.G. § 4A1.2(c)(1), set out in the margin.[1]  Where, as here, a statute "punishes only one basic form of conduct," its similarity to an offense listed in § 4A1.2(c)(1) is a question of law we review de novo.  United States v. Morales, 239 F.3d 113, 117-18 (2d Cir. 2000).

As the government contends, Ubiera failed to raise the § 4A1.2(c)(1) argument below.  Although Ubiera argued to the district court that his criminal history computation was an "overstatement," that argument was (as previously noted)

---

[1] "Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:  Careless or reckless driving, Contempt of court, Disorderly conduct or disturbing the peace, Driving without a license or with a revoked or suspended license, False information to a police officer, Fish and game violations, Gambling, Hindering or failure to obey a police officer, Insufficient funds check, Leaving the scene of an accident, Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law), Non-support, Prostitution, Resisting arrest, Trespassing."

6

based on U.S.S.G. § 4A1.3(b)(1).  Since Ubiera raises a substantially different argument on appeal, we review the district court's decision to count the shoplifting convictions only for plain error.  See Fed. R. Crim. P. 52(b); Johnson v. United States, 520 U.S. 461, 466-67 (1997).  For the reasons set forth below, we conclude that there was no error, plain or otherwise.

Among those considerations courts have focused on in determining whether a prior offense is "similar" to an offense listed in § 4A1.2(c) are: the relative punishments prescribed and the relative seriousness implied by those punishments, the elements of the offenses, the level of culpability, and the degree to which the commission of the offense predicts recidivism.  See, e.g., United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991).  We have adopted this multifactor test (though not in haec verba), but also consider "any other factor [we] reasonably find[] relevant."  United States v. Martinez-Santos, 184 F.3d 196, 206 (2d Cir. 1999).

We have not previously applied the test to a shoplifting conviction.  Because Ubiera's brief compares his shoplifting offenses only to the offense of passing a bad

7

check, we limit ourselves to that comparison and do not consider the similarity (if any) between shoplifting and the other offenses excluded by § 4A1.2(c).

The question posed by § 4A1.2(c)(1) is "whether the unlisted offense under scrutiny is 'categorically more serious' than the Listed Offenses to which it is being compared." Martinez-Santos, 184 F.3d at 206 (quoting United States v. Caputo, 978 F.2d 972, 977 (7th Cir. 1992)). But our analysis also considers "the actual conduct involved and the actual penalty imposed." United States v. Sanders, 205 F.3d 549, 553 (2d Cir. 2000) (per curiam). "Although 'categorically' might be misunderstood to mean that the unlisted offense is within a category that is more serious than the Listed Offenses, we . . . use[] the adverb in its ordinary sense to mean 'without qualification or reservation.'" Morales, 239 F.3d at 118 n.5. The facts underlying Ubiera's prior convictions are therefore relevant: his first shoplifting conviction, in March 1999, was for the theft of $248 worth of merchandise from a department store in Paramus, New Jersey; he was fined $553. His second conviction, in March 2001, was for the attempted theft of $903 merchandise from a department store in

Hackensack; he was fined $550.

In comparing an unlisted offense to the Listed Offenses, we look to the law of the state that obtained the prior conviction. See Sanders, 205 F.3d at 552. Under New Jersey law, shoplifting and passing a bad check generally entail comparable penalties for comparable values of the property taken: thus shoplifting less than $200 worth of merchandise and passing a bad check for less than $200 are disorderly persons offenses, see N.J. Stat. Ann. § 2C:20-11(c)(4) and § 2C:21-5(c)(4), and both are punished by a statutory maximum of six months in prison, see id. § 2C:43-8. One key difference in relative punishment, however, is that shoplifting carries a minimum sentence of community service, the length of which depends on the number of shoplifting offenses; third-time offenders are punished not only with 25 days of community service but with 90 days of incarceration. See id. § 2C:20-11(c). A repeat passer of bad checks is subject to no such minimums.[2]

---

[2] Changes in New Jersey law explain why it is that Ubiera's first shoplifting conviction yielded only a fine, and not community service. Prior to a 2000 amendment to the New Jersey Code of Criminal Justice, all shoplifting offenses were classified as disorderly persons offenses, repeat offenders were fined, and any person convicted of a third or subsequent shoplifting offense received a minimum

Naturally, the elements of the two offenses are different. In New Jersey, shoplifting consists chiefly of the purposeful carrying away of merchandise, the alteration of a price tag, the "under-ringing" of merchandise, or the theft of a shopping cart with the intent to deprive the merchant of the value thereof. See id. § 2C:20-11(b). Passing a bad check consists of writing a check "knowing that it will not be honored by the drawee." Id. § 2C:21-5.

In weighing relative culpability, i.e. the "degree of moral guilt," Morales, 239 F.3d at 119, two observations made by other circuits are useful. First, a shoplifting loss is much harder for the victim to detect; a department store stuck with a bad check can be certain only of how much was lost in terms of inventory or receivables--not the identity of the thief. This difference is germane because the Guidelines exclude from consideration only bad check

---

of 30 days in prison. See 1997 N.J. Sess. Law Serv. Ch. 319 (Assembly 2484) (West). The amendment introduced the gradations of punishment based upon the value of property stolen and the mandatory terms of community service for repeat offenders. See 2000 N.J. Sess. Law Serv. Ch. 16 (Senate 267) (West). It is unclear, however, why Ubiera's Presentence Investigation Report suggests that he was only sentenced to a fine for the second shoplifting conviction, as the conviction occurred after the effective date of the 2000 amendment.

10

offenses involving an existing account bearing the defendant's real name, i.e. where the fraud can easily be traced to the defendant.  See United States v. Harris, 325 F.3d 865, 873 (7th Cir. 2003) (citing U.S.S.G. § 4A1.2, Applic. Note 13).

Second, shoplifting is a "trespassory" offense that poses dangers that do not arise when a bad check is written or negotiated.  See United States v. Lamm, 392 F.3d 130, 133 (5th Cir. 2004); Harris, 325 F.3d at 872-73; United States v. Spaulding, 339 F.3d 20, 22 (1st Cir. 2003).  Shoplifting risks head-to-head confrontation with shop personnel and physical touching or struggle, as well as danger to bystanders and the erroneously accused.[3]  "The particular facts," Morales, 239 F.3d at 118, of Ubiera's prior offenses illustrate this distinction: he stole (or attempted to steal) property directly from merchants' premises.

---

[3] The Ninth Circuit has found these concerns unpersuasive on balance, in light of the "additional element of deception" in passing a bad check.  See Lopez-Pastrana, 244 F.3d at 1030 n.8.  As noted above, however, the guidelines distinguish bad check offenses that involve the more serious deception of writing checks on accounts other than one's own.  We are persuaded by the view of Judge Graber dissenting in Lopez-Pastrana:  "physical taking without consent is simply different from the act of obtaining property by fraud."  Id. at 1035.

11

Moreover, because shoplifting diminishes trust in the retail marketplace, it has insidious collateral impacts on the public as a whole.  The incidence of shoplifting tends to reduce the shopper's opportunity to handle the merchandise or try it on, leads to security measures such as the scrutiny of bags and parcels, raises costs and prices, and heightens the risk of accusing the innocent.  Few of these problems are caused when an individual writes a bad check on his own account: scrutiny falls on the check-writer alone; the risk of loss is quantified by the amount of the check; and loss can be controlled or eliminated by restricted policies that impinge less on the shopping public.

It is unclear in the cases how recidivism can be predicted on the basis of having committed one offense or another.  See Harris, 128 F.3d at 855 (concluding that prior cases "do not offer any unifying principle for how one offense, but not another, indicates a likelihood of future criminal conduct").  As noted above, however, shoplifting offenses tend to escape detection more readily than passing bad checks that bear one's real name, so that two shoplifting convictions are more likely to bespeak more than

12

two prior offenses than would two convictions for passing bad checks. Assuming that these are the relevant considerations under this factor, it thus weighs somewhat against finding the two offenses similar.

We therefore conclude that Ubiera's convictions for shoplifting are not "similar" to passing a bad check, and that the district court committed no error by including them in the criminal history computation.[4]

**III**

Ubiera argues further that the district court erred by [A] declining to credit him for acceptance of responsibility, [B] assigning a criminal history point to his disorderly conduct conviction, and [C] making findings of fact by a preponderance of the evidence.

[A] The district court declined to reduce Ubiera's offense level for acceptance of responsibility because he had refused to admit conduct beyond the offense of

---

[4] We similarly reject Ubiera's argument that his trial counsel's failure to raise the § 4A1.2(c)(1) argument to the district court constituted ineffective assistance of counsel.

conviction. Ubiera contends that this was error. Our review on this point is particularly deferential: Unless the judge's determination as to acceptance of responsibility is "without foundation," it may not be disturbed. United States v. Zhuang, 270 F.3d 107, 110 (2d Cir. 2001) (per curiam).

Ubiera says that he told the district court he was "sorry," that he was too embarrassed to have his family come to the sentencing (allegedly out of contrition), that he promised not to commit another crime, and that he did admit other, uncharged drug transactions to the probation officer. None of this establishes that the district court's finding lacked foundation.

Ubiera argues further that the district court erred by requiring him to allocute to the 1000 pill transaction. We disagree. That transaction was an overt act within the conspiracy to which Ubiera pled guilty. A district court commits no error in requiring allocution to the "full scope of the conspiracy that formed the basis for . . . the indictment, to which [the defendant] pleaded guilty." United States v. McLean, 287 F.3d 127, 134 (2d Cir. 2002). "[A]s to the offense that is the subject of the plea, the

14

district court may require a candid and full unraveling . . . ." United States v. Reyes, 9 F.3d 275, 279 (2d Cir. 1993).

[B]  Ubiera contends that the district court erred by assigning a criminal history point to a conviction for disorderly conduct, which is generally excluded from the criminal history computation.  See U.S.S.G. § 4A1.2(c)(1). A colloquy between the district court and Ubiera's trial counsel, Mark Cohen, reflects that the disorderly conduct conviction was not, in fact, included in the criminal history computation:

> Mr. Cohen: [T]he Nassau County conviction for disorderly conduct . . .doesn't count in his criminal history calculation. . . .
>
> The Court: They don't -- there is no Criminal History point but I look at this as a pattern, Mr. Cohen.

Had the district court assessed an additional criminal history point for the disorderly conduct conviction, the resulting criminal history category would have been III, not II.  See U.S.S.G. Ch. 5 Pt. A.

[C]  Finally, Ubiera argues that because his complicity

15

in the 1000 pill transaction was found by a judge and only by a preponderance of the evidence[5], his sentencing was inconsistent with <u>United States v. Booker</u>, 543 U.S. 220 (2005). <u>Booker</u> does require factfinding by a jury and beyond a reasonable doubt, but only where the fact "is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty." <u>Id.</u> at 244. Ubiera's guilty plea to the conspiracy count (and allocution to the 800 pill transaction) would have supported a sentence up to a statutory maximum of 20 years' imprisonment. 21 U.S.C. § 841(b)(1)(C). Because Ubiera was sentenced only to 75 months, his argument is without merit.

\* \* \*

For the reasons set forth above, the judgment of the district court is affirmed.

---

[5] Given the uncertainty prevailing at the time of sentencing as to the appropriate burden of proof for such findings, the district court noted for the record that the government had not proven the 1000 pill transaction beyond a reasonable doubt.

16