08-3874-cr
United States v. Shameke Walker

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: January 5, 2010                                        Decided: February 18, 2010)

Docket No. 08-3874-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

SHAMEKE WALKER

*Defendant-Appellant*.

_____

B e f o r e :

FEINBERG and KATZMANN, *Circuit Judges*,

ELLIS, *District Judge*.[*]

_____

Appeal from a final judgment of conviction by the United States District Court for the

Eastern District of New York (Jack B. Weinstein, *Judge*), entered August 5, 2008, sentencing the

defendant to 63 months' imprisonment. We hold that the district court did not err in calculating

the defendant's Sentencing Guidelines base offense level to include a U.S.S.G. § 2K2.1(a)(2)

---

[*] The Honorable T.S. Ellis, III, of the United States District Court for the Eastern District of Virginia, sitting by designation.

"crime of violence" enhancement for his prior strong arm robbery conviction under South Carolina common law.  Accordingly, we affirm the judgment of the district court.

_____

JENNY R. CHOU (James I. Glasser, *on the brief*), Wiggin and Dana LLP, New Haven, CT, *for Defendant-Appellant*.

TANISHA R. SIMON, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, *on the brief*), *for* Benton J. Campbell, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee*.

_____

ELLIS, *District Judge*:

This appeal presents a question of first impression in this circuit, namely the proper Sentencing Guidelines treatment of prior convictions for state common law crimes. For the reasons that follow, we hold that the modified categorical approach applicable in this circuit to prior convictions for statutory offenses also applies to prior convictions for state common law crimes. We also conclude that the district court correctly applied this approach in finding that appellant's prior South Carolina "strong arm robbery" conviction was a crime of violence under U.S.S.G. § 2K2.1(a)(2). Accordingly, we affirm.

**I.**

Appellant, Shameke Walker, pled guilty to illegal possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The presentence investigation report ("PSR") calculated a base offense level of 24 after determining that Walker had sustained two prior felony convictions of a "crime of violence" within the meaning of U.S.S.G. § 2K2.1(a)(2). The two prior convictions were a 1991 second degree robbery conviction and a 1999 conviction following a guilty plea for "strong arm robbery," a South Carolina common law offense.

At the sentencing hearing, Walker, by counsel, objected to the calculation of a base offense level that included an enhancement for the strong arm robbery conviction. He argued that the government had not proven that a conviction for strong arm robbery in South Carolina is a "crime of violence" as that phrase is used in the Guidelines. Relying primarily on the Supreme Court of South Carolina's definition of the offense, the district judge concluded that "strong arm

3

robbery" was a crime of violence. Accordingly, the district judge overruled the objection and calculated a base offense level of 24 that included both prior convictions as crimes of violence.

From this base offense level, the district judge subtracted two points for Walker's acceptance of responsibility. Next, pursuant to U.S.S.G. § 4A1.3, the district judge departed downward from criminal history category V to category IV, thereby resulting in a Guidelines range of 63 to 78 months' imprisonment. Thus, the district judge sentenced Walker to 63 months incarceration, a sentence that Walker is presently serving. Walker timely filed his appeal of the district judge's sentencing determination.

Walker argues on appeal that his sentence is procedurally infirm because the district judge erroneously applied the § 2K2.1(a)(2) "crime of violence" enhancement with respect to his South Carolina strong arm robbery conviction. He contends that, unlike statutory offenses, common law crimes never categorically qualify as predicate offenses warranting Guidelines enhancements and that the district court was required to proceed directly to the analysis prescribed by *Shepard v. United States*, 544 U.S. 13 (2005), to determine whether Walker, in pleading guilty in the South Carolina proceeding, stipulated to facts establishing that his prior offense was a qualifying crime of violence. Walker further argues that, even assuming the categorical approach applies, the district court erred in concluding that a conviction in South Carolina of strong arm robbery qualifies categorically as a "crime of violence" within the meaning of § 2K2.1(a)(2).

**II.**

A.

4

In reviewing Guidelines calculations, we apply a *de novo* standard to legal conclusions and we accept the sentencing court's factual findings unless they are clearly erroneous. *See United States v. Sero*, 520 F.3d 187, 189 (2d Cir. 2008); *United States v. Guang*, 511 F.3d 110, 122 (2d Cir. 2007). Whether a prior conviction qualifies as a predicate offense warranting a sentencing enhancement is a matter of law that we review *de novo*. *See United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008).

B.

We turn first to Walker's contention that the analysis applicable to predicate statutory offenses does not apply when the predicate offense was a common law crime. Whether a prior conviction following a guilty plea to a statutory offense is a qualifying predicate for a Guidelines enhancement is guided by the two-step "modified categorical approach" described in *Savage*. The first step, the "categorical inquiry," requires determining "whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense." *Savage*, 542 F.3d at 964; *see also Taylor v. United States*, 495 U.S. 575, 599–602 (1990).[1] Importantly, the statute is not merely analyzed on its face; rather, we consider the

---

[1] Although *Taylor* dealt with sentence enhancements under the Armed Career Criminal Act ("ACCA"), the Act's definition of "violent felony," 18 U.S.C. § 924(e)(2)(B), is identical in all relevant respects to the Guidelines' definition of "crime of violence," U.S.S.G. § 4B1.2(a). *United States v. Palmer*, 68 F.3d 52, 55 (2d Cir. 1995); *accord James v. United States*, 550 U.S. 192, 206 (2007). Accordingly, we apply the same categorical approach irrespective of whether the enhancement is pursuant to the ACCA or the Guidelines. *See Palmer*, 68 F.3d at 55 (finding that *Taylor* "provides highly germane authority" on question whether burglary constitutes a "crime of violence" under the Guidelines); *see also United States v. Winter*, 22 F.3d 15, 18 n.3 (1st Cir. 1994) ("Given the substantial similarity between the [ACCA's] definition of 'violent felony' and the [Guidelines'] definition of 'crime of violence,' authority interpreting one phrase frequently is found to be persuasive in interpreting the other phrase.") (citations omitted).

statutory language as it has been elucidated by the relevant state's courts.  *See, e.g., Savage*, 542 F.3d at 964–66 (examining Connecticut courts' interpretation of state statute to determine whether it fell exclusively within Guidelines definition of "controlled substance offense").  If the statute as construed by courts of that state only criminalizes conduct that falls within the federal definition of the predicate offense, then the enhancement must be applied.  *See id.* at 964.  If, on the other hand, the statute also criminalizes some conduct that does not fall within the federal definition of the predicate offense, then we undertake the second step in which we ask whether "the government has shown that the plea 'necessarily' rested on the fact identifying the conviction as a predicate offense."  *Id.* at 966 (citing *Shepard*, 544 U.S. at 21).  As the Supreme Court made clear in *Shepard*, the inquiry in this second step is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  544 U.S. at 26.  Under this second step, the Guidelines enhancement applies only if the *Shepard*-approved documents prove that the defendant admitted to offense conduct falling within the federal definition of a "crime of violence."

While Walker correctly notes that *Savage* and *Taylor*, by their terms, apply to statutory offenses, neither opinion suggests that the analysis is different with respect to common law crimes, nor is there any reason in principle that it should be.  Indeed, criminal statutes often incorporate elements of common law offenses, and in these circumstances, we have looked to the common law to determine whether the prior conviction was a qualifying predicate offense.  *See Blake v. Gonzales*, 481 F.3d 152, 156–57 (2d Cir. 2007) (examining Massachusetts common law

6

of assault and battery to determine whether statutory criminal assault and battery on a police officer is categorically a "crime of violence" warranting removal under the Immigration and Nationality Act, 8 U.S.C. § 1227). Walker also argues that the categorical approach is not appropriate for common law crimes because a state's common law crimes are defined by case law, and different state court decisions "may point to conflicting definitions." This objection in unavailing. The definitions of numerous common law crimes—including robbery—are well-settled. *See, e.g.*, *United States v. W.T.T.*, 800 F.2d 780, 783 (8th Cir. 1986) ("[T]he common law crime of robbery and the various federal statutory offenses of robbery have substantially the same essential elements."); *Allen v. State*, 857 A.2d 101, 128 (Md. Ct. Spec. App. 2004) ("The common law definition of robbery is well settled."); *State v. Neider*, 295 S.E.2d 902, 907 (W. Va. 1982) ("It is clear that robbery at common law encompassed the same elements as a larceny and included two additional elements."); *State v. Haynie*, 68 S.E.2d 628, 629 (S.C. 1952) ("Grand larceny is not defined by statute in this State but the elements of the crime are well-established by the common law.").

Accordingly, for purposes of defining a "crime of violence" under § 4B1.2(a), we agree with the Ninth Circuit that, when a "state crime is defined by specific and identifiable common law elements, rather than by a specific statute, the common law definition of a crime serves as a functional equivalent of a statutory definition." *United States v. Melton*, 344 F.3d 1021, 1026 (9th Cir. 2003); *see also United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998) (applying the modified categorical approach to the common law crime of assault and battery because "the Maryland case law fully articulates" its elements). We note that our sister circuits have consistently deemed common law convictions amenable to the categorical approach for

enhancement determinations under the Guidelines or the ACCA. *See, e.g.*, *United States v. Moore*, 223 F. App'x 422, 424 (5th Cir. 2007) (North Carolina robbery); *United States v. Zabawa*, 134 F. App'x 60, 64–67 (6th Cir. 2005) (Michigan involuntary manslaughter); *Melton*, 344 F.3d at 1025–26 (Virginia robbery); *Kirksey*, 138 F.3d at 125 (Maryland battery).

C.

We turn next to a review of the district court's application of the modified categorical approach in this case. This review properly begins with § 2K2.1(a)(2), which applies where the defendant "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."[2] And "crime of violence" is defined by reference to § 4B1.2(a), which provides that the phrase includes

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> >    (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >    (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 4B1.2(a). Additionally, the commentary to this definition further clarifies that a

> "[c]rime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

---

[2] There is no dispute that Walker's 1991 conviction for a statutory robbery offense counts as one of the two required "crime of violence" prior convictions.

§ 4B1.2 Application Note 1; *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."); *United States v. Pedragh*, 225 F.3d 240, 244 (2d Cir. 2000) ("[S]ince the commentary is part and parcel of the Sentencing Guidelines Manual . . . the two are to be read together."); *United States v. Jackson*, 60 F.3d 128, 131 (2d Cir. 1995) ("Application Note 1 is authoritative because it interprets and explains § 4B1.2 by listing offenses that constitute . . . 'crimes of violence.'") (citing *Stinson*).

Importantly, this application note specifically includes "robbery" as a "crime of violence" under § 4B1.2(a). In the context of applying ACCA enhancements, the Supreme Court held in *Taylor* that where a specific offense—in *Taylor*, burglary—is listed as a qualifying violent felony, "then the trial court need find only that the state statute corresponds in substance to the generic meaning of burglary." 495 U.S. at 599. Applying this principle here, if the definition of the South Carolina strong arm robbery offense corresponds substantially to the "generic meaning" of robbery, then the offense qualifies categorically as a "crime of violence" for Guidelines enhancement purposes. Alternatively, if South Carolina does not define the offense in a manner that corresponds substantially to the generic understanding of robbery, the offense is nonetheless categorically a "crime of violence" if it includes as an element "the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a).

The Supreme Court of South Carolina addressed the content of the common law strong arm robbery offense in *State v. Rosemond*, 589 S.E.2d 757 (S.C. 2003). Specifically, *Rosemond* held that the offense is "defined as the felonious or unlawful taking of money, goods, or other

personal property of any value from the person of another in his presence by violence or by putting such person in fear." 589 S.E.2d at 758 (citing *State v. Gourdine*, 472 S.E.2d 241 (S.C. 1996)). The decision explained that "[t]he gravamen of a robbery charge is a taking from the person or immediate presence of another by violence or intimidation," and that intimidation occurs when "an ordinary, reasonable person in the victim's position would feel a threat of bodily harm from the perpetrator's acts." *Id.* at 758–59 (citing *United States v. Wagstaff*, 865 F.2d 626 (4th Cir. 1989); *State v. Hiott*, 276 S.E.2d 163 (S.C. 1981)).

This definition corresponds in all material respects to the generic definition of robbery. Indeed, all fifty states define robbery, essentially, as the taking of property from another person or from the immediate presence of another person by force *or* by intimidation. *See* 67 Am. Jur. 2d Robbery § 12 ("[Robbery] is the taking, with intent to steal, personal property of another, from his or her person or in his or her presence, against his or her will, by violence, intimidation, or by threatening the imminent use of force."); *see also* Model Penal Code § 222.1(1) ("A person is guilty of robbery if, in the course of committing a theft, he: (a) inflicts serious bodily injury upon another; or (b) threatens another with or purposely puts him in fear of immediate serious bodily injury . . . ."); 18 U.S.C. § 1951(b)(1) ("The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury . . . ."); *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) ("The majority of states require property to be taken from a person or a person's presence by means or force of putting in fear.") (citing cases).

10

Walker's attempt to distinguish South Carolina's strong arm robbery offense from the generic definition on the basis of *Rosemond*'s facts fails to persuade. In *Rosemond*, the defendant entered a convenience store at 9:00 p.m. 589 S.E. 2d at 758. After spending five minutes in the restroom, he went behind the counter, glared at the store employee, who was standing "just a few feet" away, and flipped a cash register into the air, causing it to fall to the ground. *Id.* He then lifted it again and slammed it down against the ground, causing the register to open. *Id.* The store employee testified at trial that she ran behind a freezer door because she was frightened by the defendant's glare and by his acts of flipping and slamming the "pretty heavy" cash register to the ground. *Id.* The Supreme Court of South Carolina concluded that there was sufficient evidence that a reasonable person in the employee's position "would have felt a threat of bodily harm from petitioner's acts." *Id.* at 759.

Thus, *Rosemond* clearly confirms that the South Carolina strong arm robbery offense requires acts by the perpetrator that include or constitute a threat of bodily harm, and these are the hallmarks of generic robbery by intimidation. *Id.*; *see also* 67 Am. Jur. 2d Robbery § 23 ("[Intimidation includes] such threatening by word or gesture, as in common experience are likely to create an apprehension of danger. . . ."). Accordingly, because South Carolina's common law strong arm robbery offense corresponds substantially to the generic definition of robbery, the offense categorically qualifies as a predicate "crime of violence" for purposes of applying the Guidelines enhancement.[3]

---

[3] *See United States v. Jones*, 312 F. App'x 559, 560 (4th Cir. 2009) (finding that a conviction for strong arm robbery in South Carolina is a prior violent crime for ACCA enhancement purposes) (citing *Gourdine*, 472 S.E.2d at 241).

11

### III.

The district court correctly held that Walker's prior conviction for strong arm robbery in South Carolina was a "crime of violence" within the meaning of § 2K2.1(a)(2) and thus it did not err in applying the Guidelines enhancement.  Accordingly, we AFFIRM.