12-4402-cr(L)
*United States v. Welch*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of February, two thousand sixteen.

PRESENT:   BARRINGTON D. PARKER,
　　　　　　DENNY CHIN,
　　　　　　SUSAN L. CARNEY,
　　　　　　　　　　　*Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

　　　　　　　　　*Appellee*,

　　　　　　v.

MICHAEL WELCH and ALLAN SNYDER,

　　　　　　　　　*Defendants-Appellants*,

DANIEL METTLER, aka Boone, BETHLYN FELIX, PATRICK GRAHAM, aka Pete, STEVE CAYEA, ALLEN SNYDER,

　　　　　　　　　*Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12-4402-cr(L)
12-5004-cr(Con)

FOR APPELLEE:                              Monica J. Richards, Assistant United States
                                           Attorney, *for* William J. Hochul, Jr., United
                                           States Attorney for the Western District of New
                                           York, Buffalo, New York.

FOR DEFENDANT-APPELLANT                     David R. Morabito, Law Office of David R.
MICHAEL WELCH:                              Morabito, East Rochester, New York.

FOR DEFENDANT-APPELLANT                     Roland Richard Acevedo, Scopetta
ALLAN SNYDER:                               Seiff Kretz & Abercrombie, New York, New
                                           York.

Appeal from the United States District Court for the Western District of New York (Siragusa, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**, except that we **REMAND** for the district court to vacate defendant-appellant Michael Welch's sentence and to resentence him consistent with this order.

Following a jury trial in the district court, defendants-appellants Michael Welch and Allan Snyder were convicted of conspiracy and substantive counts relating to the manufacturing of marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 846, and 856(a)(1).  Welch appeals a judgment entered October 26, 2012, sentencing him principally to 144 months' imprisonment.  Snyder appeals a judgment entered December 11, 2012, sentencing him principally to 204

2

months' imprisonment.[1] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Defendants raise principally the following issues: (1) the sufficiency of the evidence, (2) an alleged *Brady* violation, (3) the intrastate nature of their alleged conduct, (4) the enhancement of Snyder's sentence for possession of a weapon, and (5) Welch's status as a career offender. We address each issue in turn.

### 1.  Sufficiency of the Evidence

Welch challenges the sufficiency of the evidence supporting his conviction. When a defendant challenges his conviction based on insufficiency of evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We identify no basis to disturb the jury's verdict based on the sufficiency of the evidence. There was sufficient evidence to show that Welch conspired to manufacture, and did manufacture, at least 100 marijuana plants. In particular, there were several phone calls and text messages implicating Welch in the growing operation at 13770 Savannah Spring Lake Road, where 484 marijuana plants were recovered in individual Styrofoam cups beneath suspended, fluorescent lights. To the extent Snyder

---

[1]  On July 1, 2015, Snyder filed a motion to reduce his sentence. The district court granted the motion on September 25, 2015, reducing Snyder's sentence to 162 months.

joins Welch's challenge to the sufficiency of the evidence, Snyder's claim is also without merit. Snyder was at the center of the conspiracy, as evidenced by the marijuana-growing operation out of his house and on his property, numerous phone calls and text messages, and testimony of co-conspirators.

Both Welch and Snyder argue that because the roots had been removed from the marijuana plants when they were seized by law enforcement officers, the defendants' due process rights were violated because they were unable to inspect the roots to confirm that the marijuana plants were, in fact, "plants" under the Sentencing Guidelines' definition. *See* U.S.S.G. § 2D1.1 cmt. 2 (defining a "plant" as an "organism having leaves and a readily observable root formation"). The substance of this argument is really about the sufficiency of the evidence as both defendants argue that the government failed to present evidence of root systems at trial.

There was sufficient evidence to establish that the marijuana plants had identifiable root systems and met the definition of a "plant." Officer Roger LaClair testified that, during the seizure of evidence at 13770 Savannah Spring Lake Road, he and another officer together pulled 484 marijuana plants out of individual styrofoam cups. He specifically testified that each plant had a root structure. Welch App. at 1147 ("As [the plants] went into the bag, I confirmed every plant . . . had a root at the base of the plant."). Officer Christopher Verstrate testified that he observed root structures on the 362 plants that he pulled from the growing location at 11813 Wilson Street. The

4

latter marijuana collection and counting process was also video-recorded and played for the jury. Finally, Investigator Kevin Kuntz testified that he processed the marijuana evidence, which included drying the plants, cutting off their roots, and sending the remaining material to the laboratory for THC testing.

### 2. *Brady*

Defendants also allege a *Brady* violation, in that they argue that the government failed to preserve the marijuana plants, thereby depriving the defendants of the right to inspect the plants. The argument fails, as nothing about the marijuana evidence is exculpatory. *See United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) ("[A] defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice.").

### 3. Interstate Commerce

Welch argues that the Controlled Substances Act (the "CSA") does not apply to their conduct because the marijuana manufacturing and distribution activities occurred only on an intrastate basis. An effect on interstate commerce, however, is not an element of the offense, and therefore need not be established by the government to support a conviction under the CSA. *See United States v. Parkes*, 497 F.3d 220, 229 (2d Cir. 2007) ("Under the CSA, an effect on interstate commerce is *not* an element . . . ."). Further, an as-applied challenge to the CSA is foreclosed by the Supreme Court's

decision in *Gonzales v. Raich*, which affirmed Congress's finding that all drug dealing -- even those activities strictly local in nature -- has an effect on interstate commerce. 545 U.S. 1, 17-22 (2005).

4.      **Weapon Enhancement**

Snyder challenges his two-level enhancement for possession of a dangerous weapon under § 2D1.1(b)(1) of the Sentencing Guidelines, which requires a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" in the course of a narcotics conspiracy. During the search of Snyder's home, a loaded 12-gauge Beretta shotgun was found in his bedroom near eight ounces of marijuana and $4,000 in cash. Snyder argues that the loaded gun was unrelated to the drug conspiracy because, like the 25 other long guns found in the house, it was used for hunting purposes only. It was undisputed that Snyder was an avid hunter and held a lifetime hunting license. We review a sentencing court's interpretation of the Guidelines *de novo*, and its findings of fact for clear error. *United States v. Santiago*, 384 F.3d 31, 33 (2d Cir. 2004) (*per curiam*). "The sentencing court's finding that a firearm was possessed in connection with a drug offense for purposes of § 2D1.1 will not be overturned unless it is clearly erroneous." *United States v. Stevens*, 985 F.2d 1175, 1188 (2d Cir. 1993).

While there was some dispute as to whether Snyder properly lodged an objection to the Presentence Report (the "PSR") or the enhancement or waived his objection, the district court found in the alternative to waiver that the loaded gun was

6

associated with the marijuana conspiracy and not used for hunting exclusively. Snyder App. at 108 ("[H]ad [the gun enhancement] been objected to . . . I would have found by a preponderance of evidence that the government had established that enhancement based on the facts of this case . . . ."). The district court based its finding on the fact that, while there were numerous unloaded hunting rifles found in Snyder's home, one shotgun was loaded and in close proximity to bags of marijuana and $4,000 in cash in the bedroom. The district court's finding was not clearly erroneous. Application Note 3 clarifies that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) cmt. 3; *see also United States v. Smith*, 215 F.3d 237, 241 (2d Cir. 2000) ("[O]nce the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (*i.e.*, the storage and cutting of drugs) relevant to the offense (*i.e.*, distribution of drugs) at issue, the enhancement will apply, unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." (citation omitted)).

5. **Career Offender Status**

Finally, Welch argues that the district court erred in finding that he is a career offender because his prior New York State conviction for attempted second-degree burglary is a qualifying "crime of violence" under § 4B1.2(a) of the Sentencing Guidelines. We agree that the district court erred.

7

Under the Guidelines, a "crime of violence" is defined as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)   is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). When a conviction follows a guilty plea to a statutory offense, we employ a 'modified categorical approach' to determine whether the offense of conviction constitutes a 'crime of violence.'" *United States v. Walker*, 595 F.3d 441, 443 (2d Cir. 2010). The first step involves determining "whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense." *Id.* at 444 (quoting *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008)). If the statute of conviction criminalizes certain conduct that does not fall within the Guidelines' definition of a crime of violence, "the government must demonstrate that the conviction 'necessarily' rested on facts identifying the conviction as one for a crime of violence." *United States v. Reyes*, 691 F.3d 453, 458 (2d Cir. 2012) (quoting *Walker*, 595 F.3d at 444).

Initially, we conclude that Welch's statutory offense of conviction includes conduct that does not fall within the Guidelines' definition of a crime of violence. In finding that Welch's 1992 conviction was for a crime of violence under § 4B1.2(a)(2), the

8

district court stated that under New York law, attempted burglary in the second degree always involves burglary of a dwelling. Welch App. at 2500. Second-degree burglary in New York, however, includes burglary of buildings other than dwellings. At the time Welch was convicted, Penal Code § 140.25 made it a crime of burglary in the second degree when an individual:

> [K]nowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when:
>
> (1) In effecting entry or while in the building or in immediate flight therefrom, he or another participate in the crime:
>
>> (a) Is armed with explosives or a deadly weapon; or
>>
>> (b) Causes physical injury to any person who is not a participant in the crime; or
>>
>> (c) Uses or threatens the immediate use of a dangerous instrument; or
>>
>> (d) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; *or*
>
> (2) The building is a dwelling.

N.Y. Penal Law § 140.25 (McKinney 1992) (emphasis added).

Similarly, second-degree burglary of a building other than a dwelling need not involve "use of physical force," and thus a conviction under § 140.25 of the Penal Law does not necessarily invoke the "use of physical force" clause of § 4B1.2(a)(1) of the Guidelines. A person can be convicted of burglarizing a building other than a dwelling in a way that "[c]auses physical injury." N.Y. Penal Law § 140.25(1)(b). We

9

have held that the "intentional causation of injury does not necessarily involve the use of force," as it could be accomplished "not by physical force, but by guile, deception, or even deliberate omission." *Chrzanoski v. Ashcroft*, 327 F.3d 188, 193, 195 (2d Cir. 2003) (concluding that a Connecticut third-degree assault conviction was not a predicate "crime of violence" under the Immigration and Nationality Act). Likewise here, a conviction of second-degree burglary could be accomplished by "[c]aus[ing] physical injury" without using physical force.

In addition, attempted second-degree burglary is also no longer a predicate offense under the residual clause of § 4B1.2(a)(2) in light of *Johnson v. United States*, which held that that the "residual clause" of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. 2551 (2015). The stricken language from the ACCA -- "or otherwise involves conduct that presents a serious potential risk of physical injury to another" -- is identical to the residual clause in the career offender Guideline § 4B1.2(a)(2), and we have previously explained that "authority interpreting one phrase frequently is found to be persuasive in interpreting the other phrase." *United States v. Brown*, 514 F.3d 256, 268 (2d Cir. 2008) (quoting *United States v. Palmer*, 68 F.3d 52, 55 (2d Cir. 1995)).[2] Prior to *Johnson*, attempted

---

[2] Notably, since the Supreme Court's decision in *Johnson*, the United States Sentencing Commission has amended § 4B1.2(a) to remove the residual clause under the "crime of violence" definition. *See* U.S. Sentencing Commission, Amendment to the Sentencing Guidelines, at 2-3 (Jan. 21, 2016), http://www.ussc.gov/sites/default/files/pdf/amendment-

second-degree burglary would have qualified as a "crime of violence" under the Guidelines' residual clause. *See Brown*, 514 F.3d at 268-69 (holding that New York burglary in the third degree is a crime of violence under the residual clause); *see also United States v. Hurrell*, 555 F.3d 122, 123-24 (2d Cir. 2009) (*per curiam*) (same for attempted burglary in the third degree). Indeed, the government concedes that *Johnson* applies to the career offender Guidelines. Appellee's Br. at 48 n.14. Accordingly, Welch's conviction for second-degree burglary does not qualify as a crime of violence under the residual clause of § 4B1.2(a)(2).

Because the statute criminalizes conduct that does not fall exclusively within § 4B1.2(a)(1)'s "use of physical force" clause or § 4B1.2(a)(2)'s enumerated offenses, for the enhancement to apply, the government must have "shown that the plea 'necessarily' rested on a fact identifying the conviction as a predicate offense." *Savage*, 542 F.3d at 964 (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005)).

The district court found that Welch "pled to attempted burglary of a dwelling," Welch App. at 2501-02, without requiring the government to demonstrate that the conviction "'necessarily' rested on facts identifying the conviction as one for a 'crime of violence,'" *Reyes*, 691 F.3d at 458 (quoting *Walker*, 595 F.3d at 444). In looking beyond the statutory definition to determine whether a conviction under a divisible statute is a crime of violence, a district court's inquiry is "circumscribed." *Id.* A

process/reader-friendly-amendments/20160121_RF.pdf (effective August 1, 2016). "Burglary of a dwelling" was also removed from § 4B1.2(a)(2)'s enumerated offenses. *Id.*

11

sentencing court must limit itself "to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.

In concluding that Welch pled to attempted burglary of a dwelling, the district court relied on the PSR's factual description of the circumstances surrounding the burglary conviction -- which include allegations that three dwellings were burglarized, PSR ¶ 67. Courts, however, are prohibited from relying on facts in the PSR to determine whether a conviction qualifies as a predicate offense. *Reyes*, 691 F.3d at 459 ("As a general matter, reliance on a federal PSR's factual description of a defendant's pre-arrest conduct to determine whether a prior offense constitutes a 'crime of violence' under U.S.S.G. § 4B1.2(a)(1) is prohibited."). Here, the district court went beyond the limited matters permitted in *Shepard* and relied instead on the factual description of the offense in the PSR.

In sum, Welch's conviction for attempted burglary in the second degree was not categorically a crime of violence, nor did the district court base its determination that the conviction was for a crime of violence on one of the sources approved in *Shepard*.[3] As the career offender provision requires two predicate offenses,

---

[3] The PSR also states that Welch pled guilty to attempted burglary in the third degree, PSR ¶ 67, which can also be accomplished by burglarizing a building other than a dwelling. *See* N.Y. Penal Law § 140.20 ("A person is guilty of burglary in the third degree when he knowingly enters of remains unlawfully in a building with intent to commit a crime therein."). Therefore, for the same reasons, Welch's convictions for burglary in the third degree

12

on this record, Welch does not qualify for the enhancement on the grounds relied on by the district court.

*   *   *

We have considered all of defendants' additional arguments and find them to be without merit.  For the reasons stated herein, the judgments of the district court are **AFFIRMED**, except that we **REMAND** for the district court to vacate Welch's sentence and to resentence him consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

do not qualify as a crimes of violence under § 4B1.2(a) absent the government's demonstration that one of the convictions necessarily rested on facts identifying it as a crime of violence, *Reyes*, 691 F.3d at 458, as established by *Shepard*-approved documents.