*United States v. Washington*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Submitted: April 12, 2023
Decided: June 10, 2024

No. 21-1809

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

BRANDON WASHINGTON, a.k.a. GOLDIE,

*Defendant-Appellant.**

Appeal from the United States District Court
for the Western District of New York
No. 19-cr-125-4, Richard J. Arcara, *Judge.*

Before:      SULLIVAN, MERRIAM, and KAHN, *Circuit Judges.*

Brandon Washington appeals from a judgment of conviction in the Western District of New York (Arcara, *J.*) following his guilty plea to possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Washington principally argues that the district court erroneously determined his criminal history category under the United States Sentencing Guidelines (the

---

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

"Guidelines") by improperly assessing a criminal history point for a prior state-court conviction for harassment. We disagree. The district court's addition of this point was not error because section 4A1.2(c)(1)(B) of the Guidelines provides that certain offenses normally excluded from the criminal history calculation will nonetheless be counted if they are "similar to" the instant offense. U.S.S.G. § 4A1.2(c)(1)(B). Since Washington's prior state-court harassment conviction stemmed from the same conduct – the sale of controlled substances (from the same house, no less) – as did his current federal conviction, we hold that the prior offense was "similar to" the instant offense and the district court did not err in adding the extra criminal history point. The rest of Washington's arguments are meritless, so we **AFFIRM** the district court's judgment.

Judge Merriam dissents in a separate opinion.

AFFIRMED.

Michael J. Stachowski, Michael J. Stachowski, P.C., Buffalo, NY, *for Defendant-Appellant*.

Katherine A. Gregory, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Brandon Washington appeals from a judgment of conviction in the United States District Court for the Western District of New York (Arcara, *J.*) following his guilty plea to possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Washington principally argues that the district court erroneously determined his criminal history category under the United States Sentencing Guidelines (the "Guidelines") by improperly assessing a

criminal history point for a prior state-court conviction for harassment.[1]  We disagree.  The district court's addition of this point was not error because section 4A1.2(c)(1)(B) of the Guidelines provides that certain offenses normally excluded from the criminal history calculation will nonetheless be counted if they are "similar to" the instant offense.  U.S.S.G. § 4A1.2(c)(1)(B).  Since Washington's prior state-court harassment conviction stemmed from the same conduct – the sale of controlled substances (from the same house, no less) – as did his current federal conviction, we hold that the prior offense was "similar to" the instant offense and the district court did not err in adding the extra criminal history point.  The rest of Washington's arguments are meritless, so we affirm the district court's judgment.

## I. BACKGROUND

In June 2020, Washington pleaded guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  At sentencing, the district court determined that Washington's prior state-court conviction for second-degree harassment – which, according to information in the Presentence Report ("PSR"), resulted from his guilty plea after being charged with selling controlled substances outside the same house at issue in the current case –

_____

[1] Unless otherwise specified, all references to the Sentencing Guidelines are to the 2018 version in effect when Washington was sentenced.

3

was similar to the instant offense of possession with intent to distribute. Applying section 4A1.2(c)(1)(B), the district court determined that a one-point increase to Washington's total criminal history points was warranted because of the similarity between the prior and instant offenses. The district court then sentenced Washington to sixty months' imprisonment, to be followed by six years' supervised release. On appeal, Washington makes several arguments, all to the effect that the district court erroneously determined his criminal history category under the Guidelines.

## II. DISCUSSION

We review the district court's factual findings for clear error and its interpretation and application of the Sentencing Guidelines *de novo*. *See United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008). We address Washington's arguments in turn below.

### A. The district court did not err in assessing a criminal history point for Washington's prior conviction for harassment when calculating his criminal history category.

Washington principally argues that the district court erred in adding one criminal history point for his second-degree harassment conviction, which he

contends is a noncountable misdemeanor offense under section 4A1.2(c)(1) of the

Guidelines.  We are not persuaded.

Section 4A1.2(c) provides, in relevant part:

Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses *and offenses similar to them*, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) *the prior offense was similar to an instant offense*:

Careless or reckless driving
Contempt of court
Disorderly conduct or disturbing the peace
Driving without a license or with a revoked or suspended license
False information to a police officer
Gambling
Hindering or failure to obey a police officer
Insufficient funds check
Leaving the scene of an accident
Non-support
Prostitution
Resisting arrest
Trespassing.

U.S.S.G. § 4A1.2(c) (emphasis added).

Section 4A1.2(c)'s baseline rule is that misdemeanors are counted in a

defendant's criminal history calculation.  Nevertheless, certain offenses listed in

section 4A1.2(c)(1) "and offenses similar to them" (together, the "Excluded

Offenses") are generally not counted. U.S.S.G. § 4A1.2(c)(1). Relying on that exclusion, Washington argues that his prior conviction for harassment should not have been counted because it is "similar to" disorderly conduct. *Id.* But Washington overlooks the rest of section 4A1.2(c)(1), which withholds from repeat offenders the leniency that the section otherwise provides. Specifically, section 4A1.2(c)(1)(B) states that Excluded Offenses *are* counted in a defendant's criminal history calculation if "the prior offense was similar to an instant offense." *Id.* § 4A1.2(c)(1)(B). Thus, as the district court correctly noted, even if Washington's prior conviction for harassment is an Excluded Offense, the offense must nevertheless be counted if it is similar to the instant offense. The district court concluded it was. The central question on appeal, then, is not whether Washington's prior offense is similar to a listed offense under section 4A1.2(c)(1), but whether his prior offense is similar to his instant offense under section 4A1.2(c)(1)(B). To answer either question, we must determine the meaning of "similar to."

"Our analysis begins and ends with the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020) (internal quotation marks omitted). "Similar" means "[h]aving a significant or notable resemblance

6

or likeness, in appearance, form, character, quantity, etc., to something stated or implied (though generally without being identical)." *Similar*, Oxford English Dictionary (July 2023), https://doi.org/10.1093/OED/8482586673; *see also Similar*, New Oxford American Dictionary 1629 (3d ed. 2010) ("resembling without being identical"); *Similar*, American Heritage Dictionary 1633 (5th ed. 2011) ("[h]aving a resemblance in appearance or nature; alike though not identical"); *Similar*, Webster's Third New International Dictionary 2120 (2002) ("having characteristics in common . . . alike in substance or essentials").

As these definitions make clear, the word "similar" does not limit courts to comparing offenses along only a single dimension, such as the elements of the offense, the conduct underlying the offense, or the punishment corresponding to the offense. On the contrary, the word contemplates a range of analytical criteria, including "appearance, form, character, quantity, etc." *Similar*, Oxford English Dictionary (July 2023). And no other clause in section 4A1.2(c)(1)(B) limits the "similar to" inquiry to any single factor. Section 4A1.2(c)(1)(B) does not, for example, require that a prior offense be similar "by its nature" to the instant offense. *Cf. United States v. Davis*, 588 U.S. 445, 457 (2019) (holding that a "by its nature" qualifier indicated that courts could not make a conduct-specific inquiry

when determining whether a defendant committed a crime of violence). Nor does section 4A1.2(c)(1)(B) refer to the elements of an offense or otherwise suggest that it calls for an element-by-element comparison between offenses. *Cf.* U.S.S.G. § 4B1.2(a)(1) (defining "crime of violence" to include any offense punishable by more than one year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force").

Though we have not had occasion to interpret the "similar to" phrase found in section 4A1.2(c)(1)(B) in a published opinion, we have consistently interpreted the identical phrase immediately preceding it in section 4A1.2(c)(1) as allowing courts comparing listed and unlisted offenses to take into account "any . . . relevant factor, including the actual conduct involved." *United States v. DeJesus-Concepcion*, 607 F.3d 303, 305 (2d Cir. 2010) (internal quotation marks omitted); *see also United States v. Ubiera*, 486 F.3d 71, 75 (2d Cir. 2007) ("[O]ur analysis [under section 4A1.2(c)(1)] also considers the actual conduct involved and the actual penalty imposed." (internal quotation marks omitted)); *United States v. Morales*, 239 F.3d 113, 118 (2d Cir. 2000) ("[T]he 'similar to' comparison should focus on the particular facts of the prior offense whenever the statute that was violated covers a broad range of conduct."); *United States v. Sanders*, 205 F.3d 549,

8

553 (2d Cir. 2000) ("[W]e, like the Seventh and Ninth Circuits, look to the actual conduct involved and the actual penalty imposed – rather than to the range of possible conduct or the range of possible punishments – when determining whether a prior offense is 'similar' to a [l]isted [o]ffense.").

In *DeJesus-Concepcion*, we considered whether a defendant's prior convictions for unauthorized use of a vehicle were similar to careless or reckless driving, an Excluded Offense listed in section 4A1.2(c)(1). *See* 607 F.3d at 304. In concluding that they were not, we noted that "the *actual conduct* underlying [the defendant]'s unauthorized[-]use convictions confirms the district court's conclusion that those convictions were for offenses [clearly][2] more serious than the [listed] offense of careless or reckless driving." *Id.* at 306 (emphasis added). Although the defendant's prior convictions were similar in name to the listed offense, we affirmed the district court's judgment because "the record clearly show[ed] that both [prior] convictions arose out of [the defendant]'s attempt to scrap parts from a stolen vehicle." *Id.* In short, we expressly considered the

---

[2] We used the word "categorically" in *DeJesus-Concepcion* while noting that we intended the word to mean "without qualification or reservation." 607 F.3d at 305 (internal quotation marks omitted). To avoid any suggestion that we were invoking the categorical approach, we now use the synonym "clearly."

conduct underlying the defendant's prior conviction in determining whether that prior offense was similar to one of the listed offenses.

Our reasoning in *DeJesus-Concepcion* and prior cases is consistent with the commentary to the Guidelines, which directs courts evaluating whether an offense is similar to an offense listed in section 4A1.2(c)(1) to "use a common sense approach that includes consideration of relevant factors such as . . . the level of culpability involved" and "the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." U.S.S.G. § 4A1.2, cmt. n.12(A). Assessing these factors plainly requires reviewing the underlying facts of the case, including the defendant's conduct.

To be sure, the above-referenced cases and Guidelines commentary concern the comparison of listed and unlisted offenses under section 4A1.2(c)(1), whereas this case involves the comparison of prior and instant offenses under section 4A1.2(c)(1)(B). But we have no reason to interpret the second "similar" in section 4A1.2(c)(1)(B) – comparing prior and instant offenses – any differently than the first. *See United States v. Kennedy*, 233 F.3d 157, 161 (2d Cir. 2000) ("Where the identical word or phrase is used more than once in the same act, there is a presumption that they have the same meaning." (internal quotation marks

omitted)); *see also United States v. Moore*, 997 F.2d 30, 34–35 (5th Cir. 1993) (employing same "common sense" test for comparing listed and unlisted offenses under section 4A1.2(c)(1) when comparing prior and instant offenses under section 4A1.2(c)(1)(B)). We therefore extend our approach under section 4A1.2(c)(1) to section 4A1.2(c)(1)(B) and hold that courts comparing prior and instant offenses may consider "any . . . relevant factor, including the actual conduct involved."[3] *DeJesus-Concepcion*, 607 F.3d at 305 (internal quotation marks omitted).

The dissent urges us to adopt a different rule, under which courts comparing offenses for purposes of section 4A1.2(c)(1)(B) "may consider alleged facts underlying a prior conviction for the purposes of *excluding* that offense from the criminal history score calculation," Dissent at 13, but may not consider such "unproven facts to *increase* a sentence," since doing so "implicates a defendant's Sixth amendment right," *id.* at 18. Invoking the categorical approach and the

---

[3] Our decision today accords with our summary order in *United States v. Smith*, No. 21-2314, 2023 WL 1126789, at \*2 (2d Cir. Jan. 31, 2023). In that case, we held that a defendant's prior conviction for harassment was similar to his instant offense of transmission of threats to injure, in violation of 18 U.S.C. § 875(c). In evaluating whether the prior offense was similar to the instant offense under section 4A1.2(c)(1)(B), we focused solely on the defendant's conduct and the effects of that conduct. *See id*. ("In both instances, Smith made phone calls and sent threatening text messages to individuals he perceived to have harmed him. In both instances, the victims suffered emotional distress because of Smith's threatening messages.").

modified categorical approach, the dissent argues that courts assessing whether two offenses are "similar" should limit their comparison to the offenses' elements, at least when doing so benefits the defendant.

That argument is best made to the Sentencing Commission, for it has no basis in current law. It is well-settled that "factfinding used to guide judicial discretion in selecting a punishment within limits fixed by law" does not implicate the Sixth Amendment, even though "such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts." *Alleyne v. United States*, 570 U.S. 99, 113 n.2 (2013) (internal quotation marks omitted). In other words, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *United States v. Booker*, 543 U.S. 220, 233 (2005); *see also Portalatin v. Graham*, 624 F.3d 69, 88 (2d Cir. 2010) ("[J]udicial factfinding that is undertaken to select an appropriate sentence *within* an authorized range – up to and including the *Apprendi* maximum – does not offend the Sixth Amendment."). In short, a judge selecting a sentence within a statutorily authorized range is not limited – at least by the Sixth Amendment – to considering facts found by a jury or admitted by the defendant. Of course, the

same is not true for "facts that increase either the statutory maximum or minimum." *Alleyne*, 570 U.S. at 113 n.2. But this case does not involve such facts. It involves a Guidelines provision, and Guidelines provisions do not affect the statutory minimum or maximum sentence a defendant faces. *See Beckles v. United States*, 580 U.S. 256, 266 (2017); *United States v. Holguin*, 436 F.3d 111, 117 n.1 (2d Cir. 2006).

The dissent suggests that the categorical approach has "evolved" to cover sentencing enhancements under the Guidelines. Dissent at 4. We certainly agree that a Guidelines provision may, by its terms, direct courts to use the categorical approach. For example, as noted above, section 4B1.2(a)(1) defines "crime of violence" as any offense punishable by more than one year of imprisonment that "has as an *element* the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added). That language mirrors the Armed Career Criminal Act ("ACCA") – which the Supreme Court has held requires use of the categorical approach, *see Taylor v. United States*, 495 U.S. 575, 600–01 (1990) – so we have interpreted section 4B1.2 to likewise prescribe the categorical approach, s*ee United States v. Jones*, 878 F.3d 10, 15–16 (2d Cir. 2017); *United States v. Reyes*, 691 F.3d 453, 458 n.1 (2d Cir. 2012); *United States*

*v. Walker*, 595 F.3d 441, 443–44 (2d Cir. 2010). But to be clear: our use of the categorical approach for certain Guidelines provisions follows from the text of those provisions, not from the Sixth Amendment, which is "not implicate[d]" by the now-advisory Guidelines. *Booker*, 543 U.S. at 233; *see also Cunningham v. California*, 549 U.S. 270, 291–92 (2007) ("[A]ll Members of the [*Booker*] Court agreed" that advisory Guidelines "would not implicate the Sixth Amendment." (internal quotation marks omitted)). The Guidelines provision at issue here has nothing to do with ACCA and contains no language directing courts to consider only the elements of the offenses being compared. The dissent does not argue otherwise.

The dissent nevertheless quotes *United States v. Genao*, 869 F.3d 136, 146 (2d Cir. 2017), for the proposition that "non-elemental facts underlying a previous conviction may not be considered for the purposes of applying Guidelines enhancements." Dissent at 10 (internal quotation marks omitted). That statement is true, *when the Guidelines provision calls for the categorical approach*, as did the provision at issue in *Genao*. *See* 869 F.3d at 143 (discussing U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015), which defined "crime of violence" for purposes of section 2L1.2 as an offense "that *has as an element* the use, attempted use, or threatened use of

14

physical force against the person of another" (emphasis added)). But we have never held that courts are prohibited from considering non-elemental facts from a previous conviction when applying Guidelines provisions – such as section 4A1.2(c)(1)(B) – that do *not* require the categorical approach.[4] The dissent's assertion that the categorical approach "applies equally" to Guidelines enhancements is therefore wrong. Dissent at 9–10; *see Booker*, 543 U.S. at 233.

*     *     *

Considering all "relevant factor[s], including the actual conduct involved," *DeJesus-Concepcion*, 607 F.3d at 305 (internal quotation marks omitted), we agree with the district court that Washington's harassment conviction, which was premised on his sale of marijuana, and his instant offense, possession with intent to distribute cocaine base, are similar under section 4A1.2(c)(1)(B). Both offenses arose from the same conduct – the sale of controlled substances – and both offenses were committed at the same house in Buffalo, New York. The district court therefore did not err in concluding that "the defendant is properly assessed one

---

[4] The dissent also points to our holding in *Reyes,* in which we noted that "[a]s a general matter, reliance on a federal PSR's factual description of a defendant's pre-arrest conduct to determine whether a prior offense constitutes a 'crime of violence' under U.S.S.G. § 4B1.2(a)(1) is prohibited." 691 F.3d at 459; *see* Dissent at 6. But once again, that holding simply followed from our view that section 4B1.2, as an analogue of the ACCA, required use of the categorical approach. Section 4A1.2(c)(1)(B), by contrast, does not.

15

criminal history point for this violation because the harassment offense stemmed from conduct relating to the sale of controlled substances, which is similar to the instant offense."[5]  J. App'x at 101.

## B. Washington's remaining arguments are meritless.

Washington's remaining arguments are easily dismissed.  First, Washington argues that the district court miscalculated his criminal history score by adding one point for each of his two juvenile convictions for disorderly conduct.  But Washington is mistaken:  at sentencing, the district court clearly stated that it would not count the two disorderly conduct convictions.  *See id.* at 99–100 ("[T]hose [disorderly conduct] convictions are not properly counted," and "[t]herefor[e], no points should be assessed as to [them].").  Because the district court excluded the juvenile disorderly conduct convictions, we need not consider Washington's arguments for why the district court should have done so.

Washington likewise contends that the district court erroneously applied six criminal history points under section 4A1.1(c) for his assorted misdemeanor

---

[5] The dissent concludes by asserting that the district court never actually found that the prior offense was similar to the instant offense and instead only "found that the prior offense '*stemmed from* conduct' it found was similar to the instant offense."  Dissent at 19–20 (quoting J. App'x at 101).  But this argument overlooks the district court's very next sentence, which stated:  "[i]ndeed, the prior violation was so similar to the instant offense that the [c]ourt need not go through" the analysis of whether the prior offense was similar to a listed offense.  J. App'x at 101–02.

16

convictions. Again, Washington has misread the record. Under section 4A1.1(c), a defendant is ordinarily assessed one criminal history point (up to a maximum of four points) for each prior sentence of less than sixty days' imprisonment, *see* U.S.S.G. § 4A1.1(c), including wholly suspended or stayed sentences, *see id.* § 4A1.2(a)(3), and including sentences of probation, *see id.* § 4A1.2, cmt. n.2. The PSR recommended that the district court add four points under section 4A1.1(c): one point for each of Washington's two disorderly conduct convictions, one point for Washington's second-degree harassment conviction, and one point for Washington's second-degree aggravated unlicensed operation of a motor vehicle conviction. But as the record makes clear, the district court correctly declined to count the two disorderly conduct convictions and thus added only two points under this section: one for the harassment conviction and one for the conviction relating to the unlicensed operation of a motor vehicle. The district court therefore did not meet or exceed the four-point cap under section 4A1.1(c).

Finally, Washington argues that the district court erred in determining that he committed the instant offense while on probation, resulting in two additional criminal history points under section 4A1.1(d). But the PSR makes clear that Washington began a five-year term of probation on December 11, 2018, following

17

his conviction for criminal sale of a controlled substance in the third degree. Washington was on probation until his term was revoked on December 5, 2019, a date well after the December 2018, March 2019, and April 2019 drug transactions that form the basis of the instant offense. The district court therefore did not err by adding two points under section 4A1.1(d) to reflect the fact that Washington committed the instant offense while on probation.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

18

MERRIAM, *Circuit Judge*, dissenting:

Washington was convicted on his plea of guilty to one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C). Pursuant to §4A1.2(c)(1)(B) of the United States Sentencing Guidelines ("Guidelines"), the District Court found that Washington's prior New York misdemeanor conviction for harassment should be counted for criminal history purposes: "[T]he defendant is properly assessed one criminal history point for this violation because the harassment offense stemmed from conduct relating to the sale of controlled substances, which is similar to the instant offense." Joint App'x at 101.

Upon making this finding, the District Court <u>increased</u> Washington's criminal history score and, therefore, his advisory Guidelines range <u>based on a prior conviction</u>. But the District Court did not base this increase on the offense of conviction itself, or on the elements of that offense. Instead, the District Court relied on allegations in the Pre-Sentence Investigation Report ("PSR") which in turn were derived from "Buffalo police records." <u>Id.</u> The District Court relied on the PSR's description of Washington's alleged conduct at the time of his prior

arrest to determine whether the harassment conviction was "similar to" the instant drug trafficking offense.

Because I would find that the District Court erred in relying on unproven facts to increase Washington's sentence under the Guidelines, I dissent.

**I.**

There is a long line of Supreme Court and Second Circuit precedent regarding the assessment of prior convictions that may increase a defendant's sentence under the Guidelines or a statute. "The Supreme Court has set forth the methodology for determining whether a state conviction qualifies as a predicate offense for a federal sentence enhancement." United States v. Jones, 878 F.3d 10, 15-16 (2d Cir. 2017). This methodology is commonly known as the categorical approach.

In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court first established the "formal categorical approach" for determining when a prior conviction may be counted as a predicate offense under the Armed Career Criminal Act ("ACCA"). Id. at 600. Taylor instructed sentencing courts to look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. (emphasis added). "Taylor permitted

2

sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Descamps v. United States, 570 U.S. 254, 262 (2013); see also United States v. Dantzler, 771 F.3d 137, 142 (2d Cir. 2014) (Taylor "held that, in determining whether a prior conviction was for a 'violent felony' under the ACCA, a sentencing court should look only to: (1) the fact of conviction; (2) the statutory definition of the prior offense; and, in cases where the defendant was convicted by a jury, to (3) the criminal indictment or information, together with (4) the jury instructions.").

Fifteen years later, the Supreme Court held in Shepard v. United States, 544 U.S. 13 (2005), that a sentencing court may not "look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for," a predicate offense under the ACCA. Id. at 16. Rather, a sentencing court "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id.; see also id. at 26. Since deciding Taylor and Shepard,

the Supreme Court has never deviated from this "elements-based rationale" in addressing prior convictions. Descamps, 570 U.S. at 263; see also Nijhawan v. Holder, 557 U.S. 29 (2009); Johnson v. United States, 559 U.S. 133 (2010); Mathis v. United States, 579 U.S. 500 (2016).

While Taylor and Shepard addressed sentencing enhancements under the ACCA, the principles set forth in those decisions have evolved to encompass sentencing enhancements under the Guidelines.[1] "The categorical approach . . . guides how a court may permissibly consider a defendant's previous or other convictions for the purpose of . . . applying an enhanced prison term as authorized by statute or the United States Sentencing Guidelines." Stone v. United States, 37 F.4th 825, 830 (2d Cir. 2022); see also United States v. Walker, 595 F.3d 441, 443 n.1 (2d Cir. 2010); accord United States v. Pereira-Gomez, 903 F.3d 155, 161 n.14 (2d Cir. 2018).

---

[1] We also use the categorical approach to assess prior convictions in other contexts, including, for example, when "determin[ing] such questions as whether a defendant's state or federal law conviction qualifies as a 'crime of violence' as defined in §924(c) . . . and whether a conviction qualifies as a 'crime involving moral turpitude' as defined in the Immigration and Nationality Act." Stone v. United States, 37 F.4th 825, 829-30 (2d Cir. 2022) (citations omitted); see also United States v. Thompson, 961 F.3d 545, 551 (2d Cir. 2020) (applying categorical approach to determine whether a prior state drug conviction was a predicate felony drug offense for purposes of the 21 U.S.C. §841(b)(1)(B) sentencing enhancement).

The categorical approach "serves practical purposes: It promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." Stone, 37 F.4th at 830 (citation and quotation marks omitted). But it is much more than a procedural or prudential rule. Rather, the categorical approach is firmly rooted in the Sixth Amendment.

"The categorical approach . . . avoids the procedural and Sixth Amendment concerns that may arise in employing a factual approach to determine whether a defendant's conviction for one offense can form an element of a separate offense or the basis of a sentencing enhancement." Id.; see also Descamps, 570 U.S. at 267 (Application of the categorical approach in prior-conviction cases "avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries."). By vindicating the core principles of the Sixth Amendment, the categorical approach "avoids unfairness to defendants." Mathis, 579 U.S. at 512.

Limiting a sentencing court's analysis to Shepard-approved materials "avoids potential constitutional problems associated with affording broad factfinding powers to a sentencing court in evaluating" prior convictions. Dantzler, 771 F.3d at 144. "Statements of non-elemental fact in the records of

prior convictions such as the precise manner in which the crime was committed are prone to error precisely because their proof is unnecessary. Defendants therefore may have little incentive to ensure the correctness of those details of earlier convictions that could later trigger the unforeseen . . . enhancement." Jones, 878 F.3d at 16 (citation and quotation marks omitted).

## II.

Police reports and PSRs "are not judicial records and may not be used to find facts about the prior conviction." United States v. Rood, 679 F.3d 95, 99 n.7 (2d Cir. 2012) (per curiam), abrogated on other grounds as recognized by United States v. Kroll, 918 F.3d 47, 55 (2d Cir. 2019). This rule is well established. See, e.g., United States v. Reyes, 691 F.3d 453, 459 (2d Cir. 2012) (per curiam) (In the context of §4B1.2, "reliance on a federal PSR's factual description of a defendant's pre-arrest conduct to determine whether a prior offense constitutes a 'crime of violence' . . . is prohibited."); Walker, 595 F.3d at 444 (finding in the context of §2K2.1 that "the Guidelines enhancement applies only if the Shepard-approved documents prove that the defendant admitted to offense conduct falling within" the relevant definition); United States v. Savage, 542 F.3d 959, 966 (2d Cir. 2008) ("We apply Shepard in determining whether a conviction qualified as a

6

'controlled substance offense' for the purpose of a Guidelines sentencing enhancement."); United States v. Peña, 762 F. App'x 34, 37 (2d Cir. 2019) (summary order) (Defendant's "PSR cannot serve as the exclusive basis for the District Court's 'crime of violence' determination" for purposes of §4B1.1 of the Guidelines.); United States v. Trevizo-Cera, 233 F. App'x 834, 837 (10th Cir. 2007) (summary order) ("Shepard prohibits the use of police reports about a prior conviction when calculating a Guideline sentence."); see also Pennant v. Holder, 494 F. App'x 169, 171 (2d Cir. 2012) (summary order) (In the immigration context, "[a] police report detailing the circumstances under which the crime was committed is generally not a document considered in modified categorical analyses.").

There is no principled reason to vary from this well-established rule when assessing whether a prior misdemeanor or petty offense is "similar to" the instant federal offense pursuant to §4A1.2(c)(1)(B), thereby triggering the addition of a criminal history point. That the "sentence enhancement" imposed in this case is recommended by a section of the Guidelines as to which the issue has not been explored in the case law makes no difference; the concerns articulated in Taylor and our precedent are equally present here. Specifically: (1)

7

the District Court was reviewing Washington's prior conviction for purposes of a possible increase in the Guidelines (and thus, his sentence); (2) the District Court engaged in inappropriate factfinding; and (3) the approach taken by the District Court raises procedural concerns rooted in the Sixth Amendment. See Taylor, 495 U.S. at 600-01.

The District Court added one criminal history point to the calculation of Washington's criminal history score based on Washington's prior misdemeanor harassment conviction. The District Court did not base this increase on the offense of conviction itself, or on the elements of that offense. Instead, as the government concedes in its briefing, "the district [court] found that the facts underlying Washington's harassment violation were 'similar to' the instant federal offense and should be counted pursuant to §4A1.2(c)(1)(B)." Gov. Br. at 9 (emphasis added). The District Court found those facts based on information in the PSR, which in turn relied on Buffalo police records describing Washington's alleged pre-arrest conduct – conduct that was never in fact proved. This factual determination in turn triggered an increase in Washington's criminal history category, which increased Washington's applicable Guidelines range from 46-57 months to 70-87 months. See Joint App'x at 105. This error affected Washington's

8

substantial rights and "strikes at the core of our judicial system's protections for criminal defendants." <u>Dantzler</u>, 771 F.3d at 148 (citation and quotation marks omitted).

We have, as a system and a Court, recognized how problematic it is to rely on unproven facts at sentencing and how relying on those facts can greatly impact the calculation of the Guidelines. Despite this, the majority opinion submits that a district court may rely on such unproven facts when applying §4A1.2(c)(1)(B) because "factfinding used to guide judicial discretion in selecting a punishment within limits fixed by law does not implicate the Sixth Amendment." Maj. Op. at 12 (citation and quotation marks omitted). But whether or not increases in sentences based on Guidelines calculations can now, under our evolved precedent, be found to "implicate the Sixth Amendment," <u>United States v. Booker</u>, 543 U.S. 220, 233 (2005), the concerns that led to the adoption of the categorical approach are undeniable. At bottom, we have here a judicial finding of fact, based on unproven and inherently unreliable allegations against Washington, that increased his applicable Guidelines range beyond what would have been otherwise applicable by reference only to <u>Shepard</u>-approved materials. The categorical approach applies equally to Guidelines calculations as

9

it does to statutory sentencing increases, and the concern underlying that approach was, and remains rooted in, the Sixth Amendment.

We have previously recognized that "while the non-elemental facts underlying a previous conviction may not be considered for the purposes of applying Guidelines enhancements, those facts, if established to the satisfaction of the district court, are not thereby rendered irrelevant to sentencing." United States v. Genao, 869 F.3d 136, 146 (2d Cir. 2017). A police report may provide valuable information, and may be considered in a sentencing court's evaluation of the factors set forth in 18 U.S.C. §3553(a).[2] But unproven, unadmitted allegations, which are inherently unreliable, should not be used to calculate the Guidelines.

---

[2] "[T]he sentencing judge retains considerable discretion to select the sentence that is necessary to accomplish the purposes of sentencing, taking into account the factors set forth in §3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant, based on a wide-ranging factual inquiry." United States v. Genao, 869 F.3d 136, 146 (2d Cir. 2017) (citation and quotation marks omitted); see also United States v. Reyes, 691 F.3d 453, 460 (2d Cir. 2012) ("Although a sentencing court may not rely on a PSR's description of pre-arrest conduct that resulted in a prior conviction to determine whether that prior conviction constitutes a crime of violence under the Guidelines, a sentencing court can consider that conduct under 18 U.S.C. §3553(a) when fashioning the defendant's sentence."); United States v. Trevizo-Cera, 233 F. App'x 834, 837-38 (10th Cir. 2007) (summary order) ("[O]nce th[e] Guideline sentence has been calculated, the particular facts surrounding the prior conviction could be considered when the court is determining whether the advisory Guideline sentence is the appropriate sentence in light of §3553(a)'s factors.").

## III.

The majority opinion relies on <u>United States v. DeJesus-Concepcion</u>, 607 F.3d 303, 305-06 (2d Cir. 2010) (per curiam), and principles of statutory interpretation to conclude that courts should interpret the "similar to" phrase found in §4A1.2(c)(1)(B) like "we have consistently interpreted the identical phrase" found in the primary text of §4A1.2(c)(1). Maj. Op. at 8. There is an appeal to this analysis. But the majority opinion fails to acknowledge the key difference between §4A1.2(c)(1) and §4A1.2(c)(1)(B): Application of §4A1.2(c)(1) generally <u>reduces</u> a defendant's criminal history score and, thus, his potential sentence, while application of §4A1.2(c)(1)(B) <u>precludes that reduction</u>, thereby increasing a defendant's criminal history score and potential sentence. The majority opinion's approach thus fails to vindicate the goals of the categorical approach and its well-established "Sixth Amendment underpinnings." <u>Descamps</u>, 570 U.S. at 269.

### A.

There is ample guidance regarding the use of "similar to" in the main text of §4A1.2(c)(1).[3] We first addressed it in <u>United States v. Martinez-Santos</u>, 184

---

[3] The available guidance includes an Application Note, which provides:

11

F.3d 196 (2d Cir. 1999). There, "we endorse[d] a multifactor interpretation of

'similar,'" under §4A1.2(c). Id. at 206. In adopting a multifactor interpretation of

the word "similar," we noted that the Guidelines "seek fairness," and that by

adopting a broader interpretation of the term similar, we "reduce[] the likelihood

that defendants will suffer excessively heavy increases of sentence under the

criminal history axis because of relatively trivial misconduct." Id. at 205.

One year later, in United States v. Morales, we considered "whether a

defendant's prior offense is 'similar to' the minor offenses listed in section

4A1.2(c)(1) of the Sentencing Guidelines, in which event it does not affect his

Criminal History Category nor contribute to rendering him ineligible for the so-

---

In determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. §4A1.2 Application Note 12(A). The Application Note is not, of course, binding, but it is considered "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading, of that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993). The Application Note does not suggest that the details or allegations regarding the facts of the underlying offense of conviction are appropriately considered, even in this analysis. But in any event, the Application Note by its own terms does not purport to inform the application of §4A1.2(c)(1)(B) in comparing the prior offense to the instant offense.

called 'safety valve' exception to mandatory minimum sentencing for certain narcotics offenses." 239 F.3d 113, 114-15 (2d Cir. 2000) (emphasis added). Again, we affirmed the adoption of a multifactor approach, finding that "the 'similar to' comparison should focus on the particular facts of the prior offense whenever the statute that was violated covers a broad range of conduct" because "not all the conduct covered by the statute is more serious than the Listed Offenses." Id. at 118.[4] This suggests that a sentencing court may consider alleged facts underlying a prior conviction for the purposes of excluding that offense from the criminal history score calculation, in accordance with the concerns expressed in Martinez-Santos regarding punishment for past "relatively trivial misconduct." 184 F.3d at 205. This use of unproven facts to decrease a defendant's Guidelines sentencing range, rather than to increase it, does not implicate the concerns that underlie the categorical approach.

---

[4] Notably, the prior conviction at issue in Morales was for second-degree harassment involving physical contact, the same offense for which Washington was previously convicted, see Morales, 239 F.3d at 117-20, and like Washington, Morales pled guilty in federal court to a violation of 21 U.S.C. §841(a), see id. at 116. The Court found that Morales' conviction for second-degree harassment was excludable under §4A1.2(c)(1) and thus, that it was error for the district court to "assess[] a criminal history point for that conviction." Id. at 120.

Just a few months after <u>Morales</u>, this Court decided <u>DeJesus-Concepcion</u>. There, the defendant, Vallejo, had been previously convicted of unauthorized use of a vehicle. <u>See</u> <u>DeJesus-Concepcion</u>, 607 F.3d at 304. He contended on appeal that this was "similar to" a conviction for reckless driving, an excluded offense under §4A1.2(c)(1), and that therefore no criminal history points should be assigned for that prior conviction. <u>Id.</u> The panel expressly found that Vallejo had "waived any objection to the district court's assessment of" criminal history points for the prior conviction at issue. <u>Id.</u> at 305. The opinion rested on that finding, and could have ended there. Thus, the discussion relied upon by the majority opinion assessing the District Court's application of §4A1.2(c)(1) is nonbinding <u>dicta</u>. <u>See, e.g.</u>, <u>Port Washington Tchrs' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist.</u>, 478 F.3d 494, 502 (2d Cir. 2007) (Portions of a court's opinion that "turn out to have been unnecessary to its decision" may "be characterized as dicta."); <u>United States v. Fazio</u>, 770 F.3d 160, 167 (2d Cir. 2014) (Dicta is language that was "unnecessary to our decision."). However, even that <u>dicta</u> does not support the majority opinion's reasoning, for several reasons.

First: Vallejo sought to <u>lower</u> his criminal history score by <u>excluding</u> his prior conviction from consideration under the Guidelines. In so doing, he raised

arguments about the kinds of conduct likely to underlie the two offenses. Section

4A1.2(c)(1)(B) – a provision which can be used only to increase a defendant's

criminal history score – was not at issue. Vallejo's efforts to lower his sentence do

not raise the concerns underlying the categorical approach, contrary to the efforts

to increase the defendant's sentence in this case.[5]

Second: On its face, other than involving motor vehicles, the two offenses

at issue were not at all similar; as the panel noted, they carry significantly

different penalties, and involve entirely different elements. See DeJesus-

Concepcion, 607 F.3d at 305-06. The panel's reference to the facts of the

underlying conviction was made almost in passing, and was not necessary even

to its analysis in dicta of the "similar to" question.

Third: Vallejo had previously "admitted" the nature of the conduct

underlying one of his two (unchallenged) prior convictions for unauthorized use

---

[5] The DeJesus-Concepcion opinion cites to United States v. Sanders, 205 F.3d 549, 553
(2d Cir. 2000), for the notion that a sentencing court may consider "the actual conduct
involved" in a prior conviction. Like the other cases DeJesus-Concepcion relies on,
United States v. Morales, 239 F.3d 113 (2d Cir. 2000), and United States v. Martinez–
Santos, 184 F.3d 196 (2d Cir. 1999), Sanders involved a defendant's attempt to categorize
a prior conviction under §4A1.2(c)(1), thereby lowering his criminal history score, rather
than an attempt to count the conviction under §4A1.2(c)(1)(B), thereby increasing his
score. None of these decisions control the instant case.

of a motor vehicle. Id. at 305. Here, in contrast, Washington has never admitted the allegations relied upon by the District Court.

Finally, it is significant that the court in DeJesus-Concepcion was assessing the conduct that formed the basis of the prior conviction. Vallejo admitted that he had engaged in the unauthorized use of a motor vehicle, for which he was previously convicted, because he was attempting to strip the parts of the (stolen) vehicle for sale. See id. at 305. Here, the District Court was not considering the nature of the harassment for which Washington was actually convicted. Instead, the District Court relied upon unproven, unadmitted allegations that, on the same occasion when he engaged in harassment, Washington also engaged in a sale of marijuana. Washington's prior conviction does not involve drugs in any way.[6] The possession or trafficking of drugs is not an element of the offense of

---

[6] The statute under which Washington was convicted provides, in relevant part:

> A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
> 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or
> 2. He or she follows a person in or about a public place or places; or
> 3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.
> . . .
> Harassment in the second degree is a violation.

harassment under New York law. Washington was charged, on the same occasion, with a drug trafficking offense. But that charge was dismissed in its entirety. Even if the majority opinion were correct that a sentencing court could properly consider the conduct that actually supported a prior conviction, there is nothing in our case law that suggests that a sentencing court may consider conduct utterly unconnected to any element of the prior offense of conviction in assessing that conviction.

In sum, the dicta in DeJesus-Concepcion relied upon by the majority opinion is neither useful nor persuasive in this context.

**B.**

As noted, the primary text of §4A1.2(c)(1) allows a sentencing court to exclude a prior conviction. The provision set forth at §4A1.2(c)(1)(B), on the other hand, directs sentencing courts to include in the criminal history score prior sentences for certain misdemeanor and petty offenses that are "similar to an instant offense." U.S.S.G. §4A1.2(c)(1)(B). There is little case law or other guidance regarding this second use of "similar to" in §4A1.2(c)(1). The two-word phrase may be the same, but the difference in impact is essential. If a prior

N.Y. Penal Law §240.26.

17

misdemeanor or petty offense is "similar to" a list of the enumerated offenses, as used in the first instance, then a defendant's prior misdemeanor or petty offense is <u>excluded</u> from the defendant's criminal history score. By contrast, if a prior misdemeanor or petty offense is "similar to" the instant offense, as used in subsection (B), then a defendant's prior misdemeanor or petty offense is <u>included</u> in the calculation of defendant's criminal history score, thereby triggering the addition of a criminal history point.

The categorical approach was developed to address cases in which a prior conviction is used to <u>increase</u> a defendant's potential sentence. It is anchored in the principle that consideration of unproven facts to <u>increase</u> a sentence implicates a defendant's Sixth Amendment right. <u>See</u> <u>Descamps</u>, 570 U.S. at 269. As discussed above, that approach has been extended to ensure that unproven conduct is not used to <u>increase</u> a defendant's sentence under the relevant Guidelines, as well. And that is precisely what happened in this case: The District Court considered Washington's alleged pre-arrest conduct to <u>increase</u> Washington's criminal history score and resulting Guidelines range. Case law relating to Guidelines determinations that might decrease a defendant's sentence is simply inapposite.

## C.

I would also conclude that the District Court erred in basing the increase of Washington's advisory Guidelines range on the allegations set forth in the PSR, which were obtained from Buffalo police records. We have previously concluded "that a sentencing court may not rely on a PSR's description of a defendant's pre-arrest conduct that resulted in a prior conviction to determine that the prior offense constitutes a 'crime of violence' under U.S.S.G. §4B1.2(a)(1)." Reyes, 691 F.3d at 459; accord Dantzler, 771 F.3d at 148-49. The same prohibition should equally apply when making a "similar to" determination under §4A1.2(c)(1)(B). This error alone is sufficient to justify remand.

## IV.

Finally, even under the majority opinion's reading of §4A1.2(c)(1)(B), the District Court procedurally erred by adding a criminal history point pursuant to that section. The District Court did not in fact find that "the prior offense was similar to an instant offense[,]" as required by §4A1.2(c)(1)(B). Rather, the District Court found that the prior offense "stemmed from conduct" it found was similar

19

to the instant offense. Joint App'x at 101 (emphasis added). That is insufficient, and again, remand is warranted on that basis alone.

*    *    *

Even under the now-advisory Sentencing Guidelines system, the categorical approach provides essential protection to criminal defendants, a protection firmly anchored in the Sixth Amendment. Because I would find that the District Court erred by relying on unadmitted and unproven allegations in the PSR to increase Washington's criminal history score, and therefore his applicable Guidelines range, I respectfully dissent.